PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner, v. THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Respondents.

Fourth District   No. 4—99—0517

Argued April 25, 2000.—Opinion filed June 5, 2000.

Eric E. Boyd (argued) and Susannah A. Smetana, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Edmund C. Baird (argued), Assistant Attorney General, of counsel), for respondent Pollution Control Board.

Robb H. Layman, Special Assistant Attorney General, of Springfield, for respondent Environmental Protection Agency.

Katherine D. Hodge and N. LaDonna Driver, both of Hodge & Dwyer, of Springfield, for *amicus curiae* Environmental Regulatory Group.

JUSTICE McCULLOUGH delivered the opinion of the court:

Pursuant to section 41(a) of the Illinois Environmental Protection Act (Act) (415 ILCS 5/41(a) (West 1998)), section 3—113(a) of the Administrative Review Law (735 ILCS 5/3—113(a) (West 1998)), and Supreme Court Rule 335 (155 Ill. 2d R. 335), petitioner Panhandle Eastern Pipe Line Company brings this direct review of a decision of the Illinois Pollution Control Board (Board). The Board upheld a denial by the Illinois Environmental Protection Agency (IEPA) of petitioner's application to revise a permit. This court has allowed the Illinois Environmental Regulatory Group to file a brief as *amicus curiae*.

The issues are whether (1) the appeal should be denied because petitioner has expressly abandoned any challenge to the Board's second ground for upholding the denial of application; (2) the IEPA lacked authority to reconsider emission limitations in a previously issued permit in general and because petitioner did not seek timely review of that permit when issued; and (3) federal regulations for prevention of significant deterioration (PSD) became applicable because petitioner's facility exceeded the emission limitation in the previously issued permits even though petitioner sought revision of those limitations because (a) that limitation was set to avoid PSD application and (b) it may have been miscalculated. We affirm.

The relevant facts are undisputed. On September 17, 1987, petitioner filed with the IEPA an application for a construction permit to replace 12 of its 15 compressor engines at the Glenarm Station in Sangamon County, Illinois, with four newer engines. On February 10, 1988, the IEPA issued a construction permit for petitioner to replace the old engines and imposed three special conditions: (1) to avoid the application of federal PSD rules (40 C.F.R. § 52.21 (1988)), the overall increase in nitrogen oxides ($NO_x$) emissions from the replacements would not exceed 39.9 tons per year; (2) based on emission rates calculated from standard emission factors, gas usage from the most recent one-year period, and the allowed increase of 39.9 tons per year, $NO_x$ emissions for the four new compressor engines "shall not exceed 461.3 tons per year"; and (3) petitioner was required to maintain records of the hours of operation and gas usage of each new compressor engine. Petitioner did not seek Board review of the decision awarding the permit. See Ill. Rev. Stat. 1987, ch. 111½, par. 1040 (now 415 ILCS 5/40 (West 1998)) (Board review provision). These conditions were also included in four operating permits issued on August 30, 1988; September 14, 1989; June 5, 1990; and July 26, 1991. The last of these operating permits expired June 26, 1996. Petitioner also did not seek Board review of the conditions in these permits.

After determining in August 1996 that Glenarm station was

exceeding the 461.3 tons per year $NO_x$ emission limitation, the IEPA issued a violation notice on March 20, 1997. The notice charged petitioner with violating conditions 1 and 2 of the operating permit and a federal regulation (40 C.F.R. § 52.21 (1999)) because the 461.3-tons-per-year limit was meant to avoid applicability of the federal PSD standards. Petitioner responded by letter indicating that it would submit within 45 days, as required by the notice, an application for the appropriate permit addressing $NO_x$ limitation standards.

On May 19, 1997, petitioner filed a proposed compliance commitment agreement and an application for a minor source "modifying the original permit to correct the emission limitation in that permit and provide for the installment of pre-combustion chamber control technology on the two un-controlled engines" installed pursuant to the 1988 construction permit. Petitioner further proposed an $NO_x$ emission limitation of 774.9 tons per year to avoid federal PSD standard application because (1) the calculation should have been based on emissions in 1985 and 1986 and (2) 1987 had warmer than usual weather so the natural gas usage was less.

In a letter dated June 18, 1997, the IEPA notified petitioner that the new construction permit application was incomplete. In response, in October 1997, petitioner filed additional documents in support of the application for a modified permit. On December 24, 1997, the IEPA denied the application for a construction permit because of violation of the PSD standards. The IEPA decision stated petitioner had not provided adequate best available control technology (BACT) analysis as required by PSD regulations, it had not demonstrated the emission limitation that petitioner had proposed could be achieved, and the documents submitted by petitioner did not adequately substantiate the methods used to develop the proposed emission factors. Petitioner was allowed to reapply.

Petitioner sought review before the Board. On January 21, 1999, the Board issued a lengthy decision affirming the IEPA's denial of the permit. The accompanying order stated:

"1. The Board affirms the Agency's determination to deny the permit because Panhandle did not satisfy PSD requirements for BACT and thus failed to prove that it would not violate section 9.1(d) of the Act.

2. The Board affirms the Agency's determination to deny the permit because Panhandle did not adequately support its proposed emission factor for retired engines 1101 and 1110 and thus failed to prove that it would not violate Section 9.1(d) of the Act."

After the Board denied petitioner's motions for reconsideration and a stay of the application of the PSD limits, this administrative review followed.

The issues raised on appeal relate to interpretation of statutes and administrative rules (*Richards Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 56, 692 N.E.2d 360, 366 (1998) (interpretation of a statute is a question of law); *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 243 Ill. App. 3d 421, 428, 610 N.E.2d 1356, 1361 (1993) (construction of administrative rules and regulations is governed by the same standard as construction of statutes)) and the facts are undisputed (*Bridgestone/Firestone, Inc. v. Doherty*, 305 Ill. App. 3d 141, 147, 711 N.E.2d 799, 804 (1999) (legal effect of undisputed facts is a question of law unless divergent inferences may be drawn from them). Questions of law are considered *de novo* by this court. *Mount Vernon Education Ass'n v. Illinois Educational Labor Relations Board*, 278 Ill. App. 3d 814, 818, 663 N.E.2d 1067, 1071 (1996).

On page 13 of appellant's brief, petitioner states:

> "The Agency's second ground[ ] for denial was that the manufacturer data on emissions for retired engines 1101-1112 submitted as a supplement to the application on December 12, 1997 was 'not accompanied by documentation and information that would allow it to be relied upon.' Since this second ground only relates to information relevant to the appropriate level of a revised $No_x$ emissions limit (not to whether revising the limit is possible), and Panhandle's application demonstrated that it would comply with several possible revised $No_x$ emission levels, this ground is not relevant to this appeal and is not addressed further in this Brief."

The Board affirmed the findings of the IEPA. Nevertheless, petitioner raises no issue concerning the second ground for denial of the permit.

■ The Board argues that the failure to contest this basis for denial of a permit amounts to waiver of any arguable issue. 177 Ill. 2d R. 341(e)(7). Petitioner in its reply brief argues that the second ground is not legally sufficient to support denial of the permit and that it did not exclude from the appeal consideration of the Board's affirmance of the IEPA's second ground for denying the permit. Of course, issues may not be raised for the first time in a reply brief. 177 Ill. 2d R. 341(e)(7); *Smith v. Intergovernmental Solid Waste Disposal Ass'n*, 239 Ill. App. 3d 123, 127, 605 N.E.2d 654, 656 (1992). In addition, petitioner cited no legal authority for the new argument made in its reply brief. See 177 Ill. 2d Rs. 341(g), (e)(7).

■ Petitioner has waived any challenge to the second ground for denial of its petition. The Board's decision could be upheld for that reason alone, and the issues regarding the first ground could be deemed moot. See *State Farm Mutual Automobile Insurance Co. v. George Hyman Construction Co.*, 306 Ill. App. 3d 874, 880, 715 N.E.2d 749, 754 (1999). However, courts have recognized exceptions to the

mootness doctrine where a substantial public or private question is involved, where an authoritative determination is needed for future guidance, and where the issue is likely to recur. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256, 688 N.E.2d 633, 635 (1997). In spite of waiver and mootness, the issue of whether the IEPA lacked authority to reconsider emission limitations in a previously issued permit in general and because petitioner did not seek timely review of that permit when issued will be addressed.

■ This issue primarily concerns construction of statutes and regulations.

"In cases involving the interpretation of a statute by an agency charged with administering it, the agency's interpretation is afforded considerable deference, but it is not binding on the court and will be rejected if erroneous. *Denton v. Civil Service Comm'n*, 176 Ill. 2d 144, 148, 679 N.E.2d 1234, 1236 (1997). The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994); *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990). The words of a statute are given their plain and commonly understood meanings. *Forest City Erectors v. Industrial Comm'n*, 264 Ill. App. 3d 436, 439, 636 N.E.2d 969, 972 (1994). Only when the meaning of the enactment is unclear from the statutory language will the court look beyond the language and resort to aids for construction. *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822.

\* \* \*

\*\*\* If an agency promulgates rules beyond the scope of the legislative grant of authority, the rules are invalid, as are any rules that conflict with the statutory language under which the rules are adopted. *Aurora East Public School District No. 131 v. Cronin*, 92 Ill. App. 3d 1010, 1014, 415 N.E.2d 1372, 1376 (1981)." *R.L. Polk & Co. v. Ryan*, 296 Ill. App. 3d 132, 139-41, 694 N.E.2d 1027, 1033-34 (1998).

Here, petitioner does not challenge the validity of the regulations. Neither party argues that the statutes or regulations are ambiguous. Instead, they rely on the language of these provisions, contending that they support their positions.

■ The PSD requirements in the federal Clean Air Act (Clean Air Act) (42 U.S.C. §§ 7470 through 7492 (1994)) are designed to prevent degradation of air quality in areas that meet or exceed national ambient air quality standards (see 42 U.S.C. § 7470(*l*) (1994)). Pursuant to section 165 of the Clean Air Act (42 U.S.C. § 7475 (1994)), the United States Environmental Protection Agency (USEPA) promulgated

regulations to implement the PSD program (40 C.F.R. § 52.21 (1999)), and the IEPA administers those regulations in Illinois under a delegation agreement with the USEPA (see 46 Fed. Reg. 9580, 9582, 9584 (January 29, 1981)).

Section 9.1 of the Act (415 ILCS 5/9.1 (West 1998)) coordinates Illinois' efforts in the area of controlling air pollution with the Clean Air Act (42 U.S.C. § 7401 *et seq.* (1994)) and the federal regulations promulgated pursuant thereto. Sections 9.1(b) and 9.1(c) specifically refer to sections 111, 112, 165 and 173 of the Clean Air Act (42 U.S.C. §§ 7411, 7412, 7475, 7503 (1994)). 415 ILCS 5/9.1(b), (c) (West 1998). Section 9.1(d)(1) prohibits any person from violating these sections of the Clean Air Act or any regulation adopted pursuant to those statutes, and section 9.1(d)(2) prohibits any person from constructing, installing, modifying, or operating any equipment, building, facility, source, or installation subject to regulation under these sections of the Clean Air Act except (1) in compliance with these sections and federal regulations adopted pursuant thereto, (2) with a permit granted by the IEPA, and (3) in compliance with the conditions of such permit. 415 ILCS 5/9.1(d) (West 1998). A denial of a permit or the imposition of a condition imposed on the granting of such a permit is reviewable by the Board under section 40 of the Act. 415 ILCS 5/9.1(d)(2), 40(a)(1) (West 1998).

Section 39(a) of the Act (415 ILCS 5/39(a) (West 1998)) authorizes the IEPA to adopt procedures to carry out its duties and to impose conditions as may be necessary to accomplish the purposes of the Act and that are consistent with the Board's regulations promulgated under the Act. Among the reasons a permit may be denied are that the Act or regulations promulgated under the Act will be violated or not met if the permit is granted or the applicant failed to provide a specific type of information deemed necessary by the IEPA. 415 ILCS 5/39(a)(i) through (a)(iv) (West 1998).

In the administrative rules promulgated pursuant to the Act, Title 35, subtitle B, part 201, pertains to permits and general procedures for air pollution. 35 Ill. Adm. Code § 201.101 *et seq.* (1998). Subpart D (35 Ill. Adm. Code § 201.152 *et seq.* (1998)) deals with permit applications and the renewal process. Section 201.167 establishes that the Board and the IEPA have interpreted the Act to allow revision of permits. 35 Ill. Adm. Code § 201.167 (1998). At oral argument, the IEPA and the Board acknowledged that revision is allowed, but the IEPA noted that revision of a permit is applied prospectively only. The Board further argued that it was the nature of the PSD avoidance provision that precluded the revision petitioner sought in this case.

The construction was completed following the 1988 construction

permit issuance, and petitioner is not reapplying for the same construction to be done again. The construction permit issued in 1988 contained a standard condition that, unless it was extended or voided by a newly issued permit, it expired one year from the date of issuance, unless a continuing program of construction or development on the project was started by such time. So, the original construction permit was long expired when the new construction permit application was filed in 1997. The operating permits had also expired.

The application for a permit filed in 1997, although asking for modification of the old construction permit, was really an application for a *new* permit. The IEPA argues that its interpretation of the statutes and regulations is that any revision or modification results in a new permit, and any new permit affects the revised or modified permit condition as of the date of issuance of the new permit. The IEPA argues the parties cannot go back in time to alter or replace the earlier permit and petitioner's efforts amount to an attempt to reconsider the original permitting decision.

■Administrative agencies do not have the authority to reconsider, change, or modify decisions once announced unless empowering statutes authorize it. *Reichhold Chemicals, Inc. v. Pollution Control Board*, 204 Ill. App. 3d 674, 678, 561 N.E.2d 1343, 1345-46 (1990). *Reichhold* did not discuss what must be done for an application to invoke section 201.167(a). *Reichhold* does support the IEPA and Board determinations that reconsideration and modification of the 1988 construction permit was not authorized in this case. See also *Waste Management of Illinois, Inc. v. Pollution Control Board*, 231 Ill. App. 3d 278, 300, 595 N.E.2d 1171, 1185 (1992) (the Board exceeded its statutory authority in promulgating a regulation purporting to delay the finality of an IEPA decision pending reconsideration).

Administrative agencies are required to apply their rules as written, without making *ad hoc* exceptions in adjudications of particular cases. *Mattoon Community School District No. 2 v. Illinois Educational Labor Relations Board*, 193 Ill. App. 3d 875, 881, 550 N.E.2d 610, 614 (1990). However, the IEPA's and Board's interpretations of section 201.167(a) are not unreasonable, and no evidence shows that these agencies have not applied this rule in other cases consistent with their actions in this case.

■ Petitioner concedes that under section 39(a) of the Act no permit may issue unless the applicant has demonstrated the facility or equipment will not cause a violation of the Act or regulations. Petitioner argues there are separate and distinct procedures for permit denial and enforcement of the Act, and the IEPA may not use permit denial as a substitute for enforcement for past violations of the Act or

regulations. See *Environmental Protection Agency v. Pollution Control Board*, 252 Ill. App. 3d 828, 830, 624 N.E.2d 402, 404 (1993). Here, the Board's findings are reasonable and supported by the evidence and the denial of a permit application for a permissible reason does not warrant finding the denial constituted an impermissible use of the permit process as an enforcement tool. See *ESG Watts, Inc. v. Pollution Control Board*, 286 Ill. App. 3d 325, 335-36, 676 N.E.2d 299, 306 (1997).

Jeanne Brooks, petitioner's former manager of environmental compliance, testified that the "incorrect calculation" was first discovered only after petitioner received a telephone call informing it that a notice of possible violation was going to be issued. The violation notice came out in March 1997. According to the testimony of petitioner's senior engineer, Charles Wait, it was in response to that notice that petitioner first suggested the original 461.3-ton-per-year limit was miscalculated.

According to petitioner, section 201.167(a) created an unlimited time for revising decisions of the IEPA on permits. The Board and IEPA do not read section 201.167(a) that way, and such an interpretation would render meaningless the review provisions of the Act.

If the IEPA refuses to grant a permit or grants it with conditions, "the applicant may, within 35 days, petition for a hearing before the Board to contest the decision." 415 ILCS 5/40(a)(1) (West 1998). Petitioner correctly points out that the statute allowing the filing of such a petition for Board review is couched in permissive rather than mandatory language. *M.I.G. Investments, Inc. v. Environmental Protection Agency*, 122 Ill. 2d 392, 397, 523 N.E.2d 1, 3 (1988). For that matter, so is the filing of a petition for administrative review in this court following a Board decision. 415 ILCS 5/41(a) (West 1998). The corollary rule, of course, is that such challenges may not be filed beyond the limitation periods contained in the statutes. By comparison, section 2—1203(a) of the Code of Civil Procedure also uses permissive language, but the failure to file such a motion does not stay the enforcement of a judgment (735 ILCS 5/2—1203(b) (West 1998)), and if a notice of appeal is not timely filed (see 155 Ill. 2d R. 303(a)), the judgment becomes final after 30 days even though a party could have filed a section 2—1203(a) motion but did not. The use of the term "may" in section 40(a)(1) of the Act is not beneficial to petitioner.

In *Hawaiian Electric Co. v. United States Environmental Protection Agency*, 723 F.2d 1440 (9th Cir. 1984) (*HECO*), the court considered whether HECO could challenge the validity of the January 26, 1979, permit by petition for reconsideration filed March 18, 1983. HECO also claimed there had been a miscalculation in determining

sulfur dioxide emission limits for air quality standard compliance. The USEPA determined there was a major modification requiring a new PSD permit and declined to proceed further without additional information. *HECO*, 732 F.2d at 1441-42. The court found the validity of the original permit could not be addressed for three reasons. First, the challenge was made beyond the 60-day limit for seeking review and the court did not have jurisdiction to review the permit as originally issued. Second, congressional concern about modeling science led to the USEPA being required to establish uniform modeling techniques for PSD permitting that were to be periodically reviewed and updated. These modeling guidelines (40 C.F.R. § 52.21(*l*) (1999)) were upheld on judicial review (*Alabama Power Co. v. Costle*, 636 F.2d 323, 381-88 (D.C. Cir. 1979)). The court recognized (1) the need for agency discretion in applying modeling results (citing *Wisconsin Electric Power Co. v. Costle*, 715 F.2d 323, 330-31 (7th Cir. 1983)), (2) the Clean Air Act and its legislative history indicated that Congress did not intend the USEPA to reconsider each and every PSD permit if modeling predictions were subsequently drawn into dispute, and (3) Congress attempted to avoid excessive bureaucratic contention by requiring the USEPA to decide all PSD permit applications within one year. The court found that this legislative effort would be frustrated if PSD permits could routinely be challenged *de novo*. Third, the court had previously held that postdecision studies may not be used to challenge an agency decision absent a showing that the decision was based on assumptions that " 'were entirely fictional or utterly without scientific support.' " *HECO*, 723 F.2d at 1446, quoting *Ass'n of Pacific Fisheries v. Environmental Protection Agency*, 615 F.2d 794, 812 (9th Cir. 1980). HECO conceded that the permit was reasonable when issued. *HECO*, 723 F.2d at 1446.

Petitioner argues that the decision in *HECO* is distinguishable from the case at bar because petitioner does not concede that the construction permit was reasonable when issued. However, that only applies to the third factor relied on in the *HECO* decision, and the other two factors are sufficient to support the Board's decision in this case.

The construction permit issued to petitioner in 1988 set limits to assure that petitioner did not trigger the major modification PSD requirements. In seeking the new permit, petitioner had the burden of proving that the operation of the facility would not violate the Act or regulations, and the permit application was required to contain sufficient information for the IEPA to determine that the proposed discharge would comply with all state and federal regulations. See *ESG Watts, Inc. v. Pollution Control Board*, 224 Ill. App. 3d 592, 594-95,

586 N.E.2d 1320, 1322 (1992). Instead of doing that, petitioner sought reconsideration of the 1988 determination to avoid application of major modification PSD restrictions in spite of having failed to comply with the lower standard set in 1988. The IEPA had no authority to reconsider its earlier ruling. The Board's decision upholding the IEPA's decision not to reconsider the 1988 construction permit conditions was legally correct.

The Board also contends that the entire appeal may be futile because, once the petitioner exceeded the 1988 PSD limits, federal regulations require that, as of that date, it comply with the major modification requirements it now seeks to avoid. 40 C.F.R. §§ 52.21(i) through (r) (1999). According to the Board, it is too late to provide petitioner any relief. Petitioner disputes that it automatically became subject to the PSD requirements. In light of our determination of the first two issues, we do not discuss whether federal regulations for PSD became applicable because petitioner's facility exceeded the emission limitation in the previously issued permits. We also decline to discuss the IEPA's alternative argument that, even if petitioner's proposed amended PSD avoidance limitation had been adopted, petitioner exceeded that limit in 1996, triggering the major modification regulation requiring petitioner to demonstrate BACT or that it would not exceed the limit in the future, both of which petitioner failed to do.

We affirm the decision of Board upholding the IEPA's denial of petitioner's application to revise a permit.

Affirmed.

STEIGMANN and GARMAN, JJ., concur.