ESG WATTS, INC., Petitioner, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fourth District   No. 4—00—0861

Argued July 17, 2001.— Opinion filed December 5, 2001.

COOK, J., specially concurring.

Larry A. Woodward (argued), of Rock Island, and Charles J. Northrup, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Michael P. Doyle (argued), Assistant Attorney General, of counsel), for respondents.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In January 1999, the Illinois Environmental Protection Agency (IEPA) issued a notice to ESG Watts, Inc. (Watts), pursuant to section 31 (415 ILCS 5/31 (West 1998)) of the Illinois Environmental Protection Act (Act) alleging that Watts was operating a landfill in Sangamon County without adequate postclosure financial assurance in violation of section 21.1 of the Act (415 ILCS 5/21.1 (West 1998)). Watts and IEPA attempted to resolve the matter over the following year through various communications, but they were unable to come to a resolution. In February 2000, IEPA notified Watts by letter that it might refer the matter to a prosecuting authority for enforcement proceedings to resolve the matter.

In March 2000, Watts filed a petition for a hearing before the Illinois Pollution Control Board (Board) seeking a declaration that IEPA's February 22 letter was "not authorized by law" and that Watts had met its obligations for postclosure financial assurance under the Act. In August 2000, the Board dismissed Watts' petition as prematurely filed because the IEPA's letter was a preenforcement action

under section 31 of the Act (415 ILCS 5/31 (West 1998)) and therefore not a final agency decision for purposes of appeal. Watts appeals, arguing that (1) the Board acted illegally, arbitrarily, and capriciously when it denied jurisdiction to hear Watts' appeal and (2) Watts' appeal to the Board was not mooted by the expiration of the insurance policies and by the pendency of a Watts' appeal from the disapproval of a later request to approve substitute financial assurance. We reverse.

## I. BACKGROUND

At all relevant times, Watts owned and operated a landfill in Sangamon County known as the Sangamon County landfill. The Act required Watts to post with IEPA "a performance bond or other security for the purpose of insuring closure of the site and post-closure care in accordance with this Act and regulations adopted thereunder." 415 ILCS 5/21.1(a) (West 1998). Watts obtained a pollution liability policy to cover the facility from January 26, 1998, through January 26, 1999, to meet this requirement. The policy provided coverage of $999,000 and included a $100,000 deductible.

On February 18, 1998, Watts by letter sent IEPA a copy of the insurance policy and requested a written indication that the policy satisfied its obligations under the Act. IEPA did not respond to this letter. On January 8, 1999, IEPA sent Watts a violation notice pursuant to the Act. 415 ILCS 5/31(a) (West 1998). The notice indicated that, in IEPA's judgment, Watts' landfill did not have adequate financial assurance as required by section 21.1 of the Act and it went on to explain the alleged deficiencies in the policy that Watts submitted. The notice directed Watts to provide a written response of how it would deal with the deficiencies, including an agreement committing itself to resolving the problem and a timetable of achieving the results.

On February 10, 1999, Watts responded to IEPA. Watts disputed some of IEPA's interpretations and requested time to resolve the problem. It also informed IEPA that it had renewed its policy January 26, 1999, and that the new policy corrected the alleged deficiencies.

On September 15, 1999, IEPA sent Watts a notice of intent to pursue legal action pursuant to section 31(b) of the Act (415 ILCS 5/31(b) (West 1998)). IEPA stated Watts failed to adequately respond to the January 8, 1999, violation notice and alleged the same deficiencies as the violation notice. IEPA again warned that if the problem were not resolved, the matter could be transferred to a prosecutorial authority. The notice of intent also informed Watts that Watts could request a meeting to attempt to resolve the problem.

On September 17, 1999, Larry Woodward, Watts' corporate counsel, responded to the September 1999 notice of intent. In the re-

sponse, Woodward referenced a conversation that he had with Michelle Ryan, an IEPA assistant counsel. In that conversation, Ryan had indicated that she had no record of Watts' February 10, 1999, response to the violation notice. Woodward included a copy of the February 10, 1999, response to Ryan.

On December 14, 1999, IEPA informed Watts that it had reviewed the information and still concluded that the violations in the January 8, 1999, notice had not been adequately addressed. IEPA suggested that a meeting be held to discuss the issues. On January 14, 2000, IEPA held a meeting and Watts expressed the view that IEPA failed to respond to its February 10, 1999, letter in a timely fashion and that constituted an acceptance of the financial assurance in that letter.

On January 19, 2000, Watts sent IEPA additional information relating to the insurance policy and requested written confirmation of compliance from IEPA. On February 22, 2000, IEPA informed Watts that the information still did not fulfill the requirements of section 31 of the Act because some of the information was not sent by certified mail and other information was sent outside the statutory time frame. IEPA also stated the matter "may still be referred to the Office of the Attorney General, the State's Attorneys[,] or the United States Environmental Protection Agency for formal enforcement action for the purpose of the imposition of penalties."

On March 23, 2000, Watts filed a petition for a hearing with the Board describing the petition as an appeal of a denial of a permit pursuant to section 21.1(e) of the Act (415 ILCS 5/21.1(e) (West 1998)). The petition asked the Board to issue an order requiring IEPA to approve the insurance policy as financial assurance for the Sangamon Valley landfill.

On April 17, 2000, IEPA moved to dismiss Watts' petition for a hearing, explaining that the only action it had taken within the prior 35 days was to send the February 22, 2000, letter. IEPA argued that this letter was merely a preenforcement letter under section 31 of the Act and such measures are not subject to Board review.

On May 19, 2000, Watts filed a response to IEPA's motion to dismiss. Watts argued that, although section 31 actions are not reviewable, Watts brought its petition under section 21.1 of the Act, which provides for Board review. IEPA then moved to strike Watts' response as untimely because Watts filed its response 23 days after IEPA filed its motion to dismiss. The regulations provide for a response to a motion to dismiss to be filed within seven days. 35 Ill. Adm. Code § 103.140(c) (Conway Greene CD-ROM January 2000) (now 35 Ill. Adm. Code § 101.500(a) (Conway Greene CD-Rom April 2001/1)).

On August 24, 2000, the Board dismissed Watts' petition as

untimely. It agreed that IEPA's only action within the prior 35-day period was the February 22, 2000, letter. The Board stated the letter was "clearly and plainly correspondence by the [IEPA] pursuant to [s]ection 31 of the Act." The Board stated as follows:

"Section 31 of the Act, in turn, is a preliminary process designed to afford regulated entities a process for resolving alleged violations before enforcement proceedings are initiated against them. Section 31 is a process; it is not an end result. Absent extraordinary circumstances not present here, the Board finds that a [s]ection 31 transmittal such as the February 22, 2000, letter before us is not a final, appealable determination."

The Board also granted IEPA's motion to strike Watts' response to IEPA's motion to dismiss as untimely.

This appeal followed.

## II. ANALYSIS

■ Watts contends that it filed its petition for hearing before the Board pursuant to section 21.1 of the Act. That section provides in part as follows:

"The [IEPA] shall have the authority to approve or disapprove any performance bond or other security posted pursuant to subsection (a) or (a.5) of this [s]ection. Any person whose performance bond or other security is disapproved by the [IEPA] may contest the disapproval as a permit denial appeal pursuant to [s]ection 40 of this Act." 415 ILCS 5/21.1(e) (West 1998).

Section 40 of the Act provides:

"If the [IEPA] refuses to grant or grants with conditions a permit under [s]ection 39 of this Act, the applicant may, within 35 days, petition for a hearing before the Board to contest the decision of the [IEPA]. However, the 35-day period for petitioning for a hearing may be extended for a period of time not to exceed 90 days by written notice provided to the Board from the applicant and the [IEPA] within the initial appeal period." 415 ILCS 5/40(a)(1) (West 1998).

The Board denied that it had jurisdiction to hear the case, stating that IEPA's actions were merely preenforcement procedures under section 31 of the Act. 415 ILCS 5/31 (West 1998). The issues raised on appeal relate to interpretation of statutes and administrative rules, and the interpretation of a statute is a question of law. *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 56, 692 N.E.2d 360, 366 (1998); *Bridgestone/Firestone, Inc. v. Doherty*, 305 Ill. App. 3d 141, 147, 711 N.E.2d 799, 804 (1999) (legal effect of undisputed facts is a question of law unless divergent inferences may be drawn from them). Questions of law are considered *de novo* by this court. *Panhandle Eastern Pipe*

*Line Co. v. Environmental Protection Agency*, 314 Ill. App. 3d 296, 300, 734 N.E.2d 18, 21 (2000).

Watts contends that IEPA's February 2000 letter can be construed as a disapproval of Watts' proposed postclosure security, thereby making the letter appealable under section 21.1(e) of the Act (415 ILCS 5/21.1(e) (West 1998)). Thus, the Board would have jurisdiction to review this action. However, IEPA argues that this letter was merely to inform Watts that the matter was still the subject of section 31 enforcement proceedings. IEPA contends it did not formally "approve or disapprove" of the security in accordance with section 21.1 of the Act. Thus, the Board would not have jurisdiction over the matter, because it is part of the preliminary process and not a final decision. See *National Marine, Inc. v. Illinois Environmental Protection Agency*, 159 Ill. 2d 381, 385-92, 639 N.E.2d 571, 572-75 (1994).

IEPA's February 22, 2000, letter stated as follows:

"The [IEPA] has received your transmittals concerning the *** sites dated January 19, 28, and February 7, 2000, which were received by [IEPA] on January 24, February 1, and 14, 2000[,] in response to the [v]iolation [n]otices *** dated January 8, 1999. These transmittals provided certain additional information regarding the violations cited in the [v]iolation [n]otices. [IEPA] cannot consider these transmittals as a [c]ompliance [c]ommitment [a]greement *** under the Illinois Environmental Protection Act ***, because the transmittals were not submitted by certified mail, and the third was not submitted within the 21-day time period required by [s]ection 31(a)(5).

This matter may still be considered for referral to the Office of the Attorney General, the State's Attorneys[,] or the United States Environmental Protection Agency for formal enforcement action for the purpose of the imposition of penalties."

■ Although this letter does not specifically state this is a formal denial of the adequacy of financial assurance, under the circumstances of this case the letter is such a denial under section 21.1(e). After the January 2000 meeting, Watts submitted additional documentation to gain IEPA's approval of Watts' insurance policies as adequate financial assurance. However, IEPA's February 22, 2000, letter denied the consideration of this additional information and made no allusion to further negotiation. At that point, Watts was left no further recourse to gain IEPA's approval. IEPA in its letter ultimately denied the insurance policies as adequate financial assurance under section 21.1(e). See *States Land Improvement Corp. v. Environmental Protection Agency*, 231 Ill. App. 3d 842, 843-48, 596 N.E.2d 1164, 1165-68 (1992) (judicial review of the actions of IEPA was allowed because IEPA was performing quasi-judicial function that had sufficient finality, even

though IEPA's actions had interlocutory aspects). Thus, Watts was then allowed to contest the disapproval as a permit denial appeal pursuant to section 40(a)(1) of the Act.

On March 23, 2000, Watts filed its section 21(e) petition with the Board; this was within 35 days of IEPA's February 22, 2000, letter. Accordingly, the Board had jurisdiction.

Therefore, we reverse and remand to the Board for hearing on the sufficiency of the insurance policy.

## III. CONCLUSION

Accordingly, we reverse the Board's ruling and remand to the Board with directions.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE COOK, specially concurring:

IEPA does not take the position that no final order has been entered in this case, only that if one has been entered it was not entered within the last 35 days, and therefore any appeal would be untimely. A business has a right to appeal under section 21.1 of the Act, and it is improper for IEPA to attempt to defeat that right by issuing unclear orders which it argues are final if no appeal is taken but argues are nonfinal in the event an appeal is taken.