APRIL L. THOMAS, Plaintiff-Appellee, v. DANNY DIENER *et al.*, Defendants-Appellants.

Fourth District   No. 4—03—0750

Argued April 20, 2004.—Opinion filed August 4, 2004.

Robert G. Kirchner (argued), of Lerner & Kirchner, of Champaign, for appellants.

Mark T. Petty (argued), of Law Office of Mark T. Petty, P.C., of Arcola, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Defendant, Danny Diener, owner of a business known as Chesterville Elevator, appeals the trial court's judgment ordering the business to pay $87,300 to plaintiff as a penalty for knowingly failing to pay, within seven business days, child support from its employee's wages. He argues the trial court misinterpreted several provisions within the applicable statute (750 ILCS 28/35 (West 2000)). We reverse.

## I. BACKGROUND

On September 3, 1999, an order to withhold income for child support was served upon Danny as the employer of Jerry Jean. Jean was obligated to pay $77 each week in child support to plaintiff initially through the Douglas County circuit clerk's office in Tuscola, Illinois, and later, through the State Disbursement Unit (SDU) in Wheaton, Illinois. Pursuant to the order, Danny was responsible for deducting $77 each week from Jean's pay.

In July 2001, plaintiff brought suit against Danny, seeking a penalty for the business's failure to comply with the statute governing an employer's duty to withhold child support (750 ILCS 28/35 (West 2000)). In November 2001, plaintiff filed an amended complaint, seeking a penalty from Danny in the amount of $153,500 for several payments that allegedly were timely withheld, but were mailed 1,535 days late.

At trial, plaintiff called Danny as an adverse witness who testified

that his business partner and son, Darrell, was responsible for the business's payroll and payables. According to Danny, Darrell typically wrote checks on Fridays, including paychecks. Employees' wages were paid one week in arrears. Jean worked for Danny from September 1999 through the latter part of April 2001 as a truck driver.

Danny was unable to answer specific questions posed by plaintiff's counsel as to when certain child support checks were written and mailed because Darrell was the person in charge of those tasks, and Danny had no personal knowledge thereof. He knew that it was the business's regular and common practice to withhold Jean's wages every week and send two checks together every two weeks to the appropriate child support agency.

Danny testified that in February 2001, before plaintiff's suit was filed, he received a letter from plaintiff's counsel advising him of a $100-per-day penalty that could be imposed upon him if he did not withhold and forward the appropriate child support amount within seven business days from the date Jean was paid. For the remainder of the time that Jean was employed, from February 2001 through the end of April 2001, he believed Darrell continued his practice of forwarding two checks every two weeks.

In October 2001, after perusing, checking, and matching payroll checks with child support checks, Danny realized that a child support check was not written or mailed from the pay period ending January 28, 2000. He attempted to deliver a check for $77 to plaintiff's counsel's office on October 12, 2001. He testified that Jean only worked one day that week, which may have caused confusion when writing the checks. However, Darrell had cut Jean a check on January 28, 2000, even though he did not work. The failure to issue the child support check was an oversight. Plaintiff called no other witnesses.

Darrell testified for the defense. He drives a truck and does the dispatching, payroll, and billing for the business. This was the first time he had ever been required to withhold child support payments from an employee's wages. He paid the employees one week in arrears every Saturday morning. On occasion, he would write checks on Fridays, but it was commonly understood among employees that Saturday morning was payday.

After first receiving the order, Darrell mailed the child support checks every Saturday to the Douglas County courthouse as directed. He then received notification that the checks should be sent to Wheaton, Illinois, to SDU. The notification included the rules. Darrell read the notification, which indicated that the checks should be mailed within seven business days of when the employee was paid. He called "them" and advised that he would be sending two checks every other week. Darrell explained his procedure as follows:

"A. He'd [(Jean)] work a week, and the following week, on a Saturday morning when the check was due to him, we would write him a check and would also make out the check for child support, and the first check would stay until the next—the following Saturday, and I'd mail both checks in. That is when we were going to Wheaton."

Darrell placed the checks in the mailbox in front of the business every other Saturday morning, and the mail carrier picked them up from there. That was how all of the outgoing mail from the business was normally handled. The mail was typically delivered around 10:30 a.m.

The record includes all of the original cancelled checks made payable to the Douglas County circuit clerk or to SDU for child support and to Jean for work performed. Several discrepancies in terms of dates and check numbers are evident when comparing the two sets of checks. On the stand, Darrell attempted to explain those discrepancies.

On a few occasions, he inexplicably cut the child support check on Friday and Jean's paycheck on Saturday. On a few other occasions (April 14, 2000, for example), Jean did not work a week and was not issued a paycheck, but Darrell cut a child support check regardless. Darrell stated: "I know that the child support was due, and we made a check whether he earned it or not. We took care of child support."

Darrell said plaintiff's counsel contacted him (the record does not indicate when) about a support check missing from November 24, 2000. Darrell reviewed his records and found the cancelled check that counsel claimed was missing. It had been endorsed by Jean's current wife. Darrell issued another check, dated it November 24, 2000, and mailed it to SDU. The date on the replacement check indicates that it was posted on or about December 15, 2000.

Not recalling exactly when, but after he had been sending checks to Wheaton, Darrell testified that a group of three checks were returned from SDU with a notice that the checks contained insufficient information. SDU wanted Jean's Social Security number and address referenced on the checks. Darrell added the requested information and mailed the checks back. The notice from SDU does not appear in the record.

On cross-examination, Darrell acknowledged that the checks began going to SDU in November 1999, one month after he received the order to withhold. Plaintiff's counsel questioned him on the "missing" November 24, 2000, check. SDU records (admitted as plaintiff's exhibit) indicated that on November 22, 2000, it received two checks and then none again until December 16, 2000. Because at the time

Darrell did not realize the November 24, 2000, check was missing, he waited until he had two checks to mail before sending them. He said, "I wasn't sure. I messed up, I guess, I thought I mailed it last week, but I didn't." He continued, "[n]o, I didn't mail one check. I mailed two checks but I probably fell a week behind."

One of plaintiff's exhibits was an undated notice from SDU, which indicated that two support checks were being returned (one dated December 1, 2000, and the "missing" check dated November 24, 2000) because they were "made payable to an unacceptable payee." Darrell acknowledged receiving the notice. He said he had always made the checks out the same way, and it was not until the time of the above-referenced notice that SDU returned the checks to him for the stated reason. He changed the payee on the checks and mailed them back to SDU. He again testified that every other Saturday, he put two checks in one envelope and put the envelope in the business's mailbox for the mail carrier to pick up.

On redirect, Darrell testified that the daily mail carrier picks up the business's mail from the mailbox. On re-cross-examination, Darrell testified that his mother balanced the checking account for the business. The checks are loose, not in a bound checkbook, and kept at his mother's house. His mother sends a week's supply of checks to the business with Darrell's father, Danny. The checks have duplicates, and after they are written, Darrell sends the duplicates back with Danny for Darrell's mother.

Upon examination by the trial court, Darrell stated that since the checks are loose, it was possible that they were not kept or written in consecutive order. He testified that he placed the checks in the mailbox in front of the business between 8 and 9:30 a.m. on Saturday mornings.

After the completion of the evidence, the trial court took the case under advisement and asked counsel to submit written closing arguments. On August 12, 2003, the court issued a memorandum opinion with an attached exhibit that the court prepared that listed (1) the check number of each check made payable to Jean, (2) the date of each check to Jean, (3) the date that each check was due to Jean, (3) the check number of each child support check, (4) the date of each support check, (5) the "earlier of date received or date deposited," and (6) a calculation of the number of days after seven business days that the check was delinquent. The court totaled the final column, which revealed that the business was responsible for a delinquency of 873 days. The court entered judgment in plaintiff's favor for $87,300, making several conclusions of law and findings of fact, which we will reiterate in detail below. This appeal followed.

## II. ANALYSIS

■ Section 35 of the Income Withholding for Support Act (Support Act) (750 ILCS 28/35 (West 2000)) sets forth the duties of the payor. It states in relevant part:

> "The payor shall pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor. If the payor knowingly fails to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, the payor shall pay a penalty of $100 for each day that the withheld amount is not paid to the State Disbursement Unit after the period of 7 business days has expired. The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor creates a presumption that the payor knowingly failed to pay over the amounts. This penalty may be collected in a civil action which may be brought against the payor in favor of the obligee or public office. A finding of a payor's nonperformance within the time required under this Act must be documented by a certified mail return receipt showing the date the income withholding notice was served on the payor. For purposes of this Act, a withheld amount shall be considered paid by a payor on the date it is mailed by the payor."

There are three Illinois cases that interpret and apply section 35 of the Support Act (750 ILCS 28/35 (West 2000)) or its predecessor (750 ILCS 5/706.1 (West 1996)), yet none address the precise issues presented here.

In *Vrombaut v. Norcross Safety Products, L.L.C.*, 298 Ill. App. 3d 560, 699 N.E.2d 155 (1998) (Third District), the court found that the predecessor statutory section (750 ILCS 5/706.1(G)(1) (West 1996)), upon which the plaintiff's complaint was based, imposed a fine upon an employer who failed to *remit* the amount withheld, not on one who failed to *withhold* all together. *Vrombaut*, 298 Ill. App. 3d at 563, 699 N.E.2d at 157. The parties had stipulated that the employer had failed to withhold; therefore, the plaintiff was not entitled to relief under subsection 706.1(G)(1), but under subsection 706.1(J). The dismissal of her complaint was affirmed. *Vrombaut*, 298 Ill. App. 3d at 564, 699 N.E.2d at 157-58.

In *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 745 N.E.2d 687 (2001) (Third District), the court set forth guidance on how the statutory penalty in section 35 should be assessed. The defendant employer had stipulated to liability. *Grams*, 319 Ill. App. 3d at 568, 745 N.E.2d at 689.

This court's decision in *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 652 N.E.2d 438 (1995), is more closely analogous to the case *sub judice*, with some important distinctions, than the Third District's opinions. We will address those distinctions in detail in the relevant sections below.

Briefly, in *Dunahee*, this court imposed the $100-per-day fine on an employer for failing to timely comply with a withholding order. *Dunahee*, 273 Ill. App. 3d at 210, 652 N.E.2d at 445. The then-applicable statutory section (750 ILCS 5/706.1(G)(1) (West 1994)) required the employer to forward the support check within 10 calendar days of paying the employee. *Dunahee*, 273 Ill. App. 3d at 204, 652 N.E.2d at 442. There, the employer wrote out a check each week but only mailed them once a month to the obligee. *Dunahee*, 273 Ill. App. 3d at 209, 652 N.E.2d at 445.

We considered the statute's legislative history and the federal mandate of Title 42 of the United States Code (42 U.S.C. § 666 (1988 & Sup. V 1993)), regarding employer withholding of wages of an obligor, before concluding the imposition of the penalty was appropriate. *Dunahee*, 273 Ill. App. 3d at 205-10, 652 N.E.2d at 442-45. We held the penalty would serve to compensate the plaintiff for any hardship and would deter future noncompliance by the employer. *Dunahee*, 273 Ill. App. 3d at 208, 652 N.E.2d at 444. We also noted without the application of a penalty, employers would have an incentive not to send in a withheld child support payment in a timely manner. "The longer a withheld child support check is not mailed to the obligee, the longer those funds are available for the employer to use to its own advantage." *Dunahee*, 273 Ill. App. 3d at 208-09, 652 N.E.2d at 444-45. We leave undisturbed our decision in *Dunahee* and distinguish the facts here.

In its judgment, the trial court, relying on our holding in *Dunahee* that the imposition of the penalty was mandatory when the employer did not timely remit the withholding (see *Dunahee*, 273 Ill. App. 3d at 208, 652 N.E.2d at 444), found as follows: (1) the "child support checks were not mailed at a United States Post office or a facility thereof"; (2) the term "business days" meant Monday through Saturday because, in this particular case, Danny conducted business six days a week; and (3) due to several discrepancies in the date on a child support check and the date of a payroll check and the lack of consistency in the check numbers, Danny and Darrell's records were not reliable and their testimony was "subject to question."

Danny argues that the court misinterpreted and misapplied section 35 and, alternatively, section 35 is void for vagueness. We agree with Danny that the court's findings and application of the statute were in error.

## A. Standard of Review

■ Our standard of review is twofold. To the extent we are reviewing the legal effect of undisputed facts, our review is *de novo. ESG Watts, Inc. v. Pollution Control Board*, 326 Ill. App. 3d 432, 436, 760 N.E.2d 1004, 1007 (2001). However, we review the trial court's findings of fact to ensure they are supported by the evidence and are not against the manifest weight of the evidence. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 131, 810 N.E.2d 13, 28 (2004). "One of the purposes of appellate review is to determine whether the lower court committed reversible error. Where the trial court sits without a jury, its findings of fact will not be disturbed unless they are against the manifest weight of the evidence." *Harris Trust & Savings Bank v. Village of Barrington Hills*, 133 Ill. 2d 146, 156-57, 549 N.E.2d 578, 582 (1989).

## B. Mailing

First, the trial court held it was insufficient for Danny to place the envelope containing the child support checks in the mailbox outside of the business for the daily mail carrier to pick up and take to the post office. The court noted Danny did not produce evidence of when the mail was picked up from his mailbox or that the mail carrier had a duty to pick up mail from the mailbox and forward it to the addressee.

In its finding, the trial judge relied on *Dunahee*, wherein Justice Knecht opined "[d]efendant merely needed to put each week's check in a stamped envelope addressed to the appropriate party, and place the envelope in any corner mailbox." *Dunahee*, 273 Ill. App. 3d at 209, 652 N.E.2d at 445. Relying on that proposition, the judge found the "legal effect of 'mailed' is when a person places a letter in the United States Post Office facility, so that it is on its way in the postal system to the person to whom it is addressed." We do not think Justice Knecht's term "corner mailbox" should be so strictly and literally construed.

First, there are no "corner mailboxes" in rural areas like Chesterville, Illinois. In fact, Darrell testified there was no post office in Chesterville. The nearest post office was in Arthur, Illinois. Second, according to the definition, in order to "mail" something one must "deposit (a letter, package, etc.) with the U.S. Postal Service; *** ensure that a letter, package, etc. is properly addressed, stamped, and placed into a receptacle for mail pickup." Black's Law Dictionary 964 (7th ed. 1999).

Courts have held that mailing is deemed to have occurred when there is testimony presented that indicates that a person followed his normal or customary procedure for placing documents in the mail. See *Buckingham Corp. v. Ewing Liquors Co.*, 15 Ill. App. 3d 839, 844, 305

N.E.2d 278, 282-83 (1973) (First District) (testimony of person charged with duty of mailing that general business practice was followed was required for presumption of mailing); *Raptis v. Safeguard Insurance Co.*, 13 Mich. App. 193, 198-99, 163 N.W.2d 835, 837 (1968) (Michigan Appellate Court) ("mailing" means that a letter " 'was properly prepared for transmission in the due course of mail, and that it was placed in the custody of the officer charged with the duty of forwarding the mail.' *Texas Casualty Insurance Co. v. McDonald*, 269 S.W.2d 456, 457 (Tex. Civ. App. 1954;"); *Hughes v. Pacific Wharf & Storage Co.*, 188 Cal. 210, 224, 205 P. 105, 111 (1922) (California Supreme Court) (there was sufficient proof that document was mailed when witness testified that he followed his invariable custom of mailing letters even though he did not recall mailing the specific document in question); *Federal Asbestos Co. v. Zimmerman*, 171 Wis. 594, 597, 177 N.W. 881, 88? (1920) (Wisconsin Supreme Court) (evidence that letter was placed where, in the ordinary course of business, it would be taken to post office was sufficient to constitute proof of mailing).

█ Likewise, we find physically placing a letter in a receptacle that is the property of the United States Postal Service is not required to prove that a letter was mailed. Here, we find the evidence was sufficient to constitute proof of mailing when Darrell testified that he wrote the child support checks, placed two in one envelope, and deposited the envelope in the business's mailbox for the daily mail carrier to transport to the post office. He testified that the envelope was placed in the mailbox approximately two hours prior to the mail carrier's typical delivery time. Darrell further testified that this procedure was commonly followed for all of the business's outgoing mail.

We hold that testimony of following the customary business practice for placing documents in the mail was sufficient to create a presumption that mailing occurred. We also hold that under the facts of this case, placing the envelope in the business's receptacle, where it receives incoming mail from an employee of the United States Postal Service and places outgoing mail for the postal employee to pick up, is sufficient to constitute mailing.

## C. Business Days Calculation

█ The trial court held that because Danny conducted business Monday through Saturday, "business day" within the meaning of the statute meant that the child support check, to be mailed by the seventh business day, must have been mailed by the following Monday, nine calendar days after Jean was paid. In determining whether a payment was untimely and in its calculation of the penalty, the court counted Saturday as a business day. This was in error.

The Support Act defines "business day" as a day on which State offices are open for regular business. 750 ILCS 28/15(b—5) (West 2002). State offices are generally not open for regular business on Saturday, Sundays, and certain holidays. Therefore, according to the statute, the term "business day" means Monday through Friday without regard to when the employer's business is open. The trial court should not have included Saturdays and holidays in its calculation.

## D. Payor's Liability Under the Support Act

■ Section 35 provides that child support is considered paid by the payor when it is mailed, which must be done within seven business days of paying the obligor. 750 ILCS 28/35 (West 2000). This is the central issue in reviewing the propriety of the court's order—determining when the support checks were mailed.

The trial court used the date stamped on each check (purportedly by the child support agency indicating when the checks were either posted or deposited) to estimate when the checks were mailed. We will not disturb a court's finding of fact unless it is manifestly against the weight of the evidence, as the court is in a superior position to determine credibility, weigh evidence, and determine the preponderance thereof. *Shields Pork Plus, Inc. v. Swiss Valley Ag Service*, 329 Ill. App. 3d 305, 313, 767 N.E.2d 945, 951 (2002).

Our review of the cancelled child support checks indicates that Darrell's testimony that he mailed two checks in one envelope was, in fact, supported by the evidence. Typically, two checks were date-stamped with the same date, creating a reasonable inference that two checks were mailed and received together. It did appear on several occasions that the date of the check and the date the check was stamped by the child support agency reflected an unusual delay. For example, child support checks dated October 15 and 22, 1999, bear an agency date-stamp of November 8, 1999. Based upon Darrell's testimony, he would have most likely mailed those checks on Saturday, October 23, 1999. Counting the days that the post office was open and mail was delivered, it appears that 13 days passed before the checks were stamped. This delay, and others like it, was not explained at trial; however, the court attributed it, absent evidentiary evidence, to Danny.

The court found, as it was entitled to, that Danny's and Darrell's testimony was "subject to question." The court stated "[i]f defendant had always 'mailed' checks as he alleges, it would not have taken as long to reach the [c]lerk or the S.D.U. as the posting or depositing date on the check shows." We find imposing a penalty upon the payor by relying on the date the check purportedly *arrived* at the child support

agency was improper under the statute. The payor's obligation is to mail the payment within seven business days. See 750 ILCS 28/35 (West 2002). The date SDU stamps the check has absolutely no bearing on this obligation and should not be used to determine whether the payor was in compliance with the statute. Working backward from the check's arrival date to determine the mailing date was, in this case, reversible error.

Unless inherently unreliable, uncontradicted testimony is not to be disregarded. *Cosmopolitan National Bank v. County of Cook*, 103 Ill. 2d 302, 315, 469 N.E.2d 183, 189 (1984). We have already determined that Darrell's testimony was supported by the documentary evidence in that two checks were date-stamped at one time, thus discounting the fact that his testimony was inherently unreliable. His testimony, too, was uncontradicted. Plaintiff called only one witness, Danny. No witnesses were called to contradict Darrell's testimony that he mailed two checks every other week. Plaintiff did not present evidence of when the checks were postmarked, the usual time it took mail to travel from Chesterville to Tuscola or Wheaton, or the normal procedure for opening and posting checks within the child support agency.

In sum, we find it was against the manifest weight of the evidence for the trial court to attribute any gaps in time between the date of the check and the date the checks were stamped to Darrell's failure to timely mail the checks, especially when, as was presumably the case here, many hands touched the checks between the time they were placed "in the mailbox" and the time the agency either received, posted, or deposited the checks. The delay could be attributed to anyone in the chain and should not have been automatically assessed to Danny without evidentiary support.

As we have stated above, section 35 provides that the payor's obligation is considered completed upon mailing of the withheld amount. See 750 ILCS 28/35(a) (West 2000). Uncontradicted testimony showed that Darrell satisfied the obligation by mailing two checks in one envelope every other Saturday within the legally prescribed time frame.

### E. Distinguishing *Dunahee*

In *Dunahee*, we imposed a penalty upon the employer for failing to timely remit child support withheld from the obligor's pay. There, the person in charge of withholding and mailing the child support checks testified she withheld the proper amount from the obligor's pay every week and only mailed the checks once a month. Section 706.1 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/706.1

(West 1994)) required the employer to mail the checks within 10 calendar days of the date the obligor was paid. The employer admitted consistent noncompliance with the withholding order by intentionally forwarding the payments only once a month for several months despite notification from the obligee. *Dunahee*, 273 Ill. App. 3d at 209, 652 N.E.2d at 445.

We held the mandatory nature of the statute, coupled with the legislative intent, made application of the statute reasonable since that was the type of behavior the statute was meant to redress. Such is not the case here. Danny and Darrell testified they complied with the statute by mailing each check within the required seven business days of paying Jean. The evidence demonstrated that if the check was not written or mailed within the seven business days (like the check paid in October 2001 for the child support due January 2000, and the "missing" check from November 2000), it was an oversight and not a knowing violation of the Support Act. Darrell testified that he knew the child support needed to be paid and took care of it whether Jean earned it or not.

Thus, we find the trial court erred in imposing a 622-day penalty on the January 2000 check and an 11-day penalty on the November 2000 check. Neither constitutes a "knowing" violation under the Support Act. We find Darrell's testimony regarding the importance of paying child support regardless of whether Jean earned it indicated he did not intentionally disregard his obligation on either occasion.

In *Dunahee*, we analyzed the House debates on the then-applicable statute. Representative Dunn was concerned that a penalty imposed upon an employer at the rate of $100 a day was unduly harsh and could be unfair to smaller employers, especially those who had more than one employee subject to an order to withhold. Representative Frederick attempted to ease Representative's Dunn's concerns by indicating that the penalty would not apply to an innocent or negligent employer, but to one who intentionally withheld a child support payment from the custodial parent. *Dunahee*, 273 Ill. App. 3d at 207-08, 652 N.E.2d at 444.

Because the employer in *Dunahee* knew it was not forwarding the checks within 10 calendar days of payday, the penalty was properly imposed. Here, the employer was, at worst, negligent. He was cognizant of forwarding the child support within the required seven business days and, except for a few innocent exceptions, the evidence did not demonstrate that he failed to do so. Mailing two checks every other Saturday complied with the statute. The check held from the first week was mailed, according to Darrell, within five business days of when Jean was paid.

In analyzing the intent behind section 35, we are mindful of the duty placed on the employer. In effect, the State has recruited employers as private child support enforcement agencies. The enforcement obligation is not voluntary. The employer is subject to a civil penalty and liability for failure to comply.

To permit plaintiff to recover a windfall of $87,300 from Jean's employer is an onerous burden and should be found only if it is clear that the legislature intended that burden. See *Child Support Recovery Services, Inc. v. Inn at the Waterfront, Inc.*, 7 P.3d 63, 69-71 (Alaska 2000) (Alaska Supreme Court) (analyzing intent of state's withholding statute). Neither the express legislative intent, the language of the statute, nor the evidence presented supports application of the penalty here. We find it was improper to impose a penalty against Danny, and we reverse the trial court's judgment therefor.

### F. Void for Vagueness

In the alternative, Danny argues that section 35 is void for vagueness. Because we have reversed the trial court's judgment on other grounds, we need not address this issue. "The general rule is that courts will not consider the validity of a statutory provision unless the person challenging the provision is directly affected by it or the unconstitutional feature is so pervasive as to render the entire statute invalid." *People v. Morgan*, 203 Ill. 2d 470, 482, 786 N.E.2d 994, 1002 (2003). Neither is the case here.

### III. CONCLUSION

For the reasons stated, the judgment of the trial court is reversed.

Reversed.

STEIGMANN, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I disagree that defendants sustained their burden of proving the child support checks were timely mailed.

Section 35(a) of the Support Act provides in part:

"The payor shall pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor." 750 ILCS 28/35(a) (West 2002).

With respect to payment by mail, the Statute on Statutes, section 1.25, provides in pertinent part:

"[A]ny payment of any kind or description required or authorized to be paid to[ ] the State or any political subdivision thereof, by the laws of this State:

(1) if transmitted through the United States mail, shall be deemed filed with or received by the State or political subdivision on the date shown by the post office cancellation mark stamped upon the envelope or other wrapper containing it[.]" 5 ILCS 70/1.25 (West 2002).

The trial court found:

"Defendant, in support that his method of mailing complied with 750 ILCS 28/35, did not produce any evidence when the mail was picked up at his private rural mailbox, or that the rural mail carrier had any duty to pick up such mail from Defendant's private rural mailbox or to forward such mail left in a rural mailbox to the person to whom addressed."

Placing mail in a private rural mailbox does not meet the requirements of section 35(a) of the Support Act or section 1.25 of the Statute on Statutes.

In *Dunahee*, we suggested that pursuant to section 35, "Defendant merely needed to put each week's check in a stamped envelope addressed to the appropriate party, and place the envelope in any corner mailbox." *Dunahee*, 273 Ill. App. 3d at 209, 652 N.E.2d at 445. In the present case, the trial court found that the evidence presented did not meet the standard suggested in *Dunahee*.

The trial court's judgment should be affirmed.