*In re* MARRIAGE OF ERIKA N. CHEN, f/k/a Erika N. Ulner, n/k/a Erika N. Walsh, Petitioner-Appellant and Cross-Appellee, and GREG A. ULNER, Respondent-Appellee (Elmhurst Auto Mall, Inc., Third-Party Defendant-Appellee and Cross-Appellant; Elmhurst Dodge, Inc., Third-Party Defendant).

Second District    No. 2—03—0824

Opinion filed December 9, 2004.

Celia G. Gamrath, of Schiller, DuCanto & Fleck, of Chicago, for appellant.

Jerald M. Mangan, of Mangan, Langhenry, Gillen & Lundquist, of Wheaton, for appellee Elmhurst Auto Mall, Inc.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Diane M. Potts, Assistant Attorney General, of counsel), for intervenor.

· JUSTICE BOWMAN delivered the opinion of the court:

The trial court ordered defendant Elmhurst Auto Mall, Inc. (Auto Mall), to pay $38,100 to petitioner, Erika N. Chen, f/k/a Erika N. Ulner, n/k/a Erika N. Walsh (Erika), as a penalty for knowingly failing to pay over, within seven business days, child support from its employee's wages pursuant to section 35 of the Income Withholding for Support Act (Support Act) (750 ILCS 28/35 (West 2002)). On appeal, Erika argues that the trial court miscalculated the penalty owed under the statute. Auto Mall cross-appealed, arguing that it owes no penalty and that section 35 is unconstitutional. We reverse.

## I. BACKGROUND

On July 3, 1997, the trial court entered an order for the withholding of child support (1997 support order) that required the employer of respondent, Greg Ulner (Greg), to withhold $155.57 per week from

Greg's paycheck. Paragraphs five and six of the 1997 support order described the employer's duties and penalties. Paragraph five stated that the employer was required to withhold Greg's income "beginning with the first payment of income that occurs after 14 days following the date of mailing of a specially certified copy of this Order." Paragraph six stated that, if the employer willfully fails to withhold or pay over income, the court shall enter judgment and direct the issuance of an execution for the total amount that should have been withheld or paid over. Paragraph six also stated that, if the employee is denied employment, discharged, disciplined, or otherwise penalized by the employer because of the duty to withhold, the court may impose a fine of up to $200 against the employer. The employer was instructed to send withheld child support payments to the circuit clerk of Du Page County.

Greg began employment with Elmhurst Dodge, Inc. (Dodge), in early 1998. The 1997 support order was served upon Dodge on February 20, 1998, by certified mail, with proof of service filed with the court on February 25, 1998. Dodge complied with the 1997 support order during the time that Greg worked there. On June 26, 2000, Greg ended his employment at Dodge and began working for Auto Mall. Auto Mall and Dodge are both owned by Auto Nation, Inc., which owns several hundred dealerships.

Greg worked at Auto Mall in July and August 2000, was paid weekly, and received a total of eight paychecks. According to Greg, he personally served Anton Wanshek, controller at Auto Mall, a copy of the 1997 support order during an initial employee interview. Although Wanshek denied having an interview with Greg, Auto Mall withheld $155.57 from each of Greg's paychecks. The pay schedule was as follows:

| Paycheck Issued | Deduction |
| --- | --- |
| July 13, 2000 | $155.57 |
| July 13, 2000 | $155.57 |
| July 20, 2000 | $155.57 |
| July 27, 2000 | $157.50 |
| August 10, 2000 | $155.57 |
| August 17, 2000 | $155.57 |
| August 24, 2000 | $155.57 |
| September 1, 2000 | $155.57. |

(Greg received two paychecks dated July 13, 2000, because he never received a check for his first week of work at Auto Mall).

Despite the withholdings, Erika informed Greg in late July or

early August 2000 that she had not received any child support checks since July 6, 2000. According to Greg, on five or six occasions he informed Wanshek and Steve Phillipos, general manager of both Dodge and Auto Mall, that child support withholdings had not been paid over.

On August 4, 2000, Erika served an order/notice to withhold income for child support (2000 support order) on Auto Mall by certified mail. The 2000 support order stated that Auto Mall "must begin withholding [$155.57] no later than the first pay period occurring 14 working days after the date of this Notice." Further, Auto Mall was required to "send the payment within 7 working days of the pay date of withholding" to the Illinois Child Support State Disbursement Unit (SDU). Paragraph seven stated that, "In Illinois you may be found liable for the total amount which you failed to withhold or pay over and fines up to $100 per day for each day after the grace period."

On October 17, 2000, Erika filed suit against Auto Mall and Dodge. In her complaint, she alleged that (1) although Auto Mall withheld income from Greg's wages, it failed to pay over the support withheld since July 6, 2000; (2) Auto Mall or Dodge owed $2,730.95 for past-due child support; and (3) Auto Mall or Dodge owed $10,000 in penalties under section 35 of the Support Act for the 100 days either or both failed to pay over income withheld from Greg's paychecks.

On January 5, 2001, Erika received from Auto Mall a check for $933.42 that was dated August 23, 2000.

On February 16, 2001, Dodge filed a motion to dismiss alleging that the penalty sought by Erika could not be enforced against Dodge since Greg ended his employment at Dodge prior to July 6, 2000, on June 26, 2000. On May 11, 2001, the trial court granted Dodge's motion and dismissed Dodge from the lawsuit.

On July 13, 2001, Erika filed a motion for leave to amend her complaint, which the trial court granted. In her amended complaint dated August 28, 2001, Erika alleged that, despite withholding $1,401.93 in child support from Greg's paychecks from July 13, 2000, to September 1, 2000, Auto Mall knowingly did not pay over any of the withheld child support to the SDU until it paid $933.42 on January 5, 2001. Erika alleged that $466.71 in child support still remained due and that Auto Mall now owed penalties totaling more than $150,000.

A bench trial commenced on January 8, 2003, and Auto Mall controller Wanshek testified as follows. From March to the beginning of July 2000, Wanshek was consulting for Auto Nation, Inc. During this time, he worked as a contract consultant for both Dodge and Auto Mall, which he testified were separate corporations with separate

facilities and separate payroll systems. As a consultant from March to the beginning of July, Wanshek did not handle Dodge's payroll and had no knowledge of Greg's payroll situation or the 1997 support order.

Wanshek then became a salaried employee as controller at Auto Mall in July 2000. During the five months he worked there, "things were very chaotic." As controller, Wanshek was responsible for supervising all accounting functions and financial reporting, supervising the accounting staff, and organizing the flow of paperwork. His position also involved the preparation and distribution of paychecks. Wanshek admitted that he was responsible for preparing Greg's weekly paycheck and identifying deductions that were to be withheld.

Wanshek used Automatic Data Processing (ADP), an outside payroll service, to produce the payroll checks. Wanshek would phone in to ADP the gross totals for each employee, and then instruct ADP to make requisite deductions. Wanshek was aware that Greg was having money withheld from his paychecks in order to pay child support. Although Wanshek admitted that he relied on some type of written documentation authorizing him to deduct child support, he did not recall how he initially received this documentation. Wanshek assumed that he authorized the withholdings based on an exchange of information between Dodge and Auto Mall, since the Dodge file containing the 1997 support order would have been forwarded to Auto Mall. Contrary to Greg's testimony, Wanshek did not recall meeting with Greg for an initial employee interview. According to Wanshek, such a meeting would have been handled by Lynn Soukal, who was head of payroll at Dodge.

Wanshek instructed ADP to withhold payment of child support from Greg's checks. Wanshek testified that ADP should have remitted those payments to the circuit clerk of Du Page County as instructed by the 1997 support order. Although Wanshek became aware that the payments were not being paid over to the circuit clerk of Du Page County, he could not recall how or when. In addition, while he did not recall any specific conversation, Wanshek stated that it was "possible" that he had had one or more conversations with Greg and/or Erika regarding the matter.

Auto Mall received the August 2000 support order on August 4, 2000. Unlike the 1997 support order, which instructed payments to be paid over to the circuit clerk of Du Page County, the 2000 order directed payments to be paid over to the SDU.

On August 23, 2000, Wanshek was aware that withheld child support was not being paid over. Consequently, Wanshek prepared a $933.42 check, payable to the circuit clerk of Du Page County, for

Greg's child support. The check reflected six weeks of withholding. Wanshek admitted that he was responsible for making sure the check got sent, and he assumed that he gave it to one of his staff members. Wanshek was also responsible for reconciling the account from which the check was drawn. However, the "volume was too great" and there were not "enough resources to have those things completed in a timely manner." Wanshek never confirmed whether the check was received, and it was stipulated that the SDU did not receive the check until January 5, 2001.

Greg received two paychecks from Auto Mall after Wanshek prepared the August 23 check. Wanshek testified that because he was aware that past withholdings had not been paid over, it was his responsibility to make sure that the withholdings from the last two checks were paid over to the SDU. However, it was stipulated that $311.54 in child support from Greg's two paychecks, dated August 24, 2000, and September 1, 2000, was not paid over to the SDU until October 2, 2001. Wanshek had no knowledge of the October 2 check since he left Auto Mall in December 2000.

Erika testified that child support payments were timely when Greg was employed at Dodge. However, from the end of June 2000 to the end of August 2000, she did not receive support. Erika testified that, in approximately August 2000, she called Auto Mall more than twice and advised a manager named Chris that she was not receiving child support.

Lynn Soukal testified that she was employed as human resource (HR) and payroll manager at Dodge. She began the HR position in February 2000, and the payroll position in April 2001. Wanshek stopped working at Auto Mall in December 2000, and Soukal was asked to go to Auto Mall to pick up some HR files. In a plastic folder located on the side of Wanshek's desk, she happened to find the $933.42 check. After consulting her supervisor, she was advised to mail the check out. Soukal mailed the check near the end of December 2000.

The trial court made the following conclusions of law and findings of fact. Greg transferred his employment from Dodge to Auto Mall in July 2000. Although related, these corporations were separate and maintained separate accounting systems. At Auto Mall, Greg met with Wanshek and gave him a copy of the 1997 support order. However, the 2000 support order was not served on Auto Mall until August 4, 2000. Because the 1997 support order provided notice of the $200 penalty, but not the $100-per-day penalty, the court determined that the $100-per-day penalty could not be assessed on Greg's first four paychecks, dated July 13 through July 27. In reaching this conclusion, the court

relied on section 20 of the Support Act (750 ILCS 28/20(c)(7) (West 2002)), which requires that a support order shall "state the duties of the payor and the fines and penalties for failure to withhold and pay over income." Following Auto Mall's receipt of the 2000 support order, Greg received three more paychecks where child support was withheld but not paid over within the seven working days. The court found that Auto Mall knowingly failed to pay over the amounts withheld from these checks. In particular, the court noted:

> "Mr. Wanshek acknowledged that, at some point, he became aware that money was being withheld from [Greg's] paycheck but not being paid over. And he identified a check that he wrote at the end of August for the amount of the accumulated child support. He testified that he thought this check had been mailed. In fact, however, it apparently, according to his testimony and that of Lynn Soukal, became lost in his office.
>
> * * *
>
> Without question, the notice was served in August, the money was withheld, it is not paid over, it was acknowledged by Wanshek that the money was due. He wrote a check to correct the situation, yet, it was never mailed until December.
>
> This is sufficient, in my mind, to establish, by a preponderance, that the employer probably knew of its obligation to remit these funds yet failed to do so. Thus, as to the three checks that were issued after the notice in August, I believe, that the $100 penalty will have to be applied."

On June 19, 2003, the trial court entered a $38,100 judgment against Auto Mall. Erika filed a timely notice of appeal and Auto Mall timely cross-appealed.

## II. ANALYSIS

On appeal, Erika contends that the trial court erred in calculating the penalty assessed against Auto Mall under section 35 of the Support Act. Specifically, Erika contends that the penalty should be assessed on all eight paychecks or, alternatively, on the last four. Auto Mall counters that no penalty is owed. In order to resolve these issues, we set forth the relevant language in the Support Act.

■ Section 35, which sets forth the duties of the payor, states, in relevant part:

> "(a) It shall be the duty of any payor who has been served with an income withholding notice to deduct and pay over income as provided in this Section. The payor shall deduct the amount designated in the income withholding notice *** beginning no later than the next payment of income which is payable or creditable to the obligor that occurs 14 days following the date the income with-

holding notice was mailed, sent by facsimile or other electronic means, or placed for personal delivery to or service on the payor. *** The payor shall pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor. If the payor knowingly fails to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, the payor shall pay a penalty of $100 for each day that the withheld amount is not paid to the State Disbursement Unit after the period of 7 business days has expired. The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor creates a presumption that the payor knowingly failed to pay over the amounts. *** A finding of a payor's nonperformance within the time required under this Act must be documented by a certified mail return receipt showing the date the income withholding notice was served on the payor." 750 ILCS 28/35(a) (West 2002).

Further, section 20 of the Support Act states that every order for support shall:

"(7) state the duties of the payor and the fines and penalties for failure to withhold and pay over income." 750 ILCS 28/20(c)(7) (West 2002).

In this case, our standard of review is twofold. In reviewing the legal effect of undisputed facts, our review is *de novo*. *Thomas v. Diener*, 351 Ill. App. 3d 645, 652 (2004). In addition, we review the trial court's interpretation of a statute *de novo*. *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 569 (2001). However, where the trial court sits without a jury, we will not disturb it's findings of fact unless they are against the manifest weight of the evidence. *Thomas*, 351 Ill. App. 3d at 652.

## A. Paychecks One Through Four

■ Erika first argues that it was error for the court not to impose a penalty on the first four paychecks. Because Dodge was properly served with the 1997 support order, and because of Auto Mall's affiliation with Dodge, she argues that Auto Mall received proper notice of the 1997 support order. Moreover, Erika argues that Auto Mall had actual notice of the 1997 support order, as evidenced by its withholding of support from all of Greg's checks. Erika reasons that Auto Mall's failure to pay over the support on eight separate occasions creates a statutory presumption that it knowingly failed to pay over the amounts withheld from all eight paychecks. In addition, Erika asserts

that the court erred by interpreting section 20 as requiring notice of the $100-per-day penalty. Based on Erika's calculations, set forth below, she concludes that the proper penalty is $168,200 ($100 per day multiplied by 1,682 days):

| Paycheck Issued | Deduction | Withholding Received | Days Late |
|---|---|---|---|
| July 13, 2000 | $155.57 | January 5, 2001 | 165 |
| July 13, 2000 | $155.57 | January 5, 2001 | 165 |
| July 20, 2000 | $155.57 | January 5, 2001 | 158 |
| July 27, 2000 | $157.50 | January 5, 2001 | 151 |
| August 10, 2000 | $155.57 | January 5, 2001 | 137 |
| August 17, 2000 | $155.57 | January 5, 2001 | 130 |
| August 24, 2000 | $155.57 | October 2, 2001 | 392 |
| September 1, 2000 | $155.57 | October 2, 2001 | 384 |
| | | | 1682. |

Auto Mall counters that the trial court properly excluded Greg's first four paychecks when assessing the penalty, because the 1997 support order failed to provide notice of the $100-per-day penalty. Because Auto Mall did not receive notice of the $100-per-day penalty until it was served with the 2000 support order on August 4, Auto Mall asserts that any paychecks issued to Greg prior to that date are not subject to the penalty. We agree.

Section 20 is clear that all support orders shall state the duties of the payor and the fines and penalties for failure to withhold and pay over income. 750 ILCS 28/20(c)(7) (West 2002). Here, the use of the word "shall" in the statute indicates a mandatory obligation (see *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 205 (1995)), and the trial court correctly interpreted section 20 as requiring a support order to give notice to the payor of the penalties for failing to pay over income.

As Auto Mall points out, the 1997 support order did not provide notice of the $100-per-day penalty. Instead, the penalty provision in the 1997 support order was limited to the total amount that should have been paid over, and a fine of up to $200. As a result, the fact that Auto Mall had actual notice of the 1997 support order does not provide Erika the relief she seeks. Unlike the 1997 support order, the 2000 support order clearly stated that the payor may be liable for the total amount that was not paid over as well as fines of up to $100 per day. Further, the 2000 support order made reference to section 706.1(G) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/706.1(G) (West 1996)), the predecessor to section 35 of the Support

Act. Finally, under section 35 of the Support Act, a finding of a payor's nonperformance must be documented by a certified mail return receipt showing the date the income withholding notice was served on the payor. 750 ILCS 28/35(a) (West 2002). As stated, Erika did not serve the 2000 support order on Auto Mall by certified mail until August 4, 2000. For all of these reasons, the four paychecks issued prior to service of the 2000 support order were not subject to the section 35 penalty provision.

## B. Paycheck Five

■ Erika also argues that the trial court miscalculated the penalty by failing to include Greg's fifth paycheck. Erika contends that, in finding that the three checks issued after the 2000 support order were subject to the penalty, the trial court also intended to impose a penalty on Greg's fifth paycheck, issued on August 10, 2000. Auto Mall counters that the August 10, 2000, paycheck covered a pay period commencing prior to service of the 2000 support order.

The 2000 support order stated that Auto Mall "must begin withholding [$155.57] no later than the first pay period occurring 14 working days after the date of this Notice." The notice was dated August 3, 2000, and served on Auto Mall on August 4, 2000. As documented by the paychecks, Greg was paid on a weekly basis for the days worked between Tuesday and Monday, with payment issued on the following Thursday. Accordingly, the August 10, 2000, check covered the pay period from Tuesday, August 1, 2000, through Monday, August 7, 2000. As Auto Mall correctly points out, this pay period was already half over at the time Auto Mall received the 2000 support order dated August 3, 2000. Because Auto Mall was to begin withholdings no later than the first pay period occurring 14 working days after the August 3, 2000, support order, the first pay period subject to the support order was Greg's sixth check, issued on August 17, 2000. Thus, the trial court correctly determined that only Greg's last three paychecks were subject to the penalty.

## C. Paychecks Six Through Eight

■ Erika's final argument is that the trial court erred in calculating the $38,100 penalty on Greg's final three paychecks. As the trial court noted, it relied on Auto Mall's calculations in arriving at the $38,100 penalty:

| Paycheck Issued | Deduction | Withholding Received | Days Late |
|---|---|---|---|
| August 17, 2000 | $155.57 | January 5, 2001 | 134 |

| | | | |
|---|---|---|---|
| August 24, 2000 | $155.57 | January 5, 2001 | 127 |
| September 1, 2000 | $155.57 | January 5, 2001 | 120 |
| | | | 381. |

Auto Mall asserts that there was no statutory duty to withhold and pay over income from the first five paychecks since Auto Mall was not properly served until it received the 2000 support order. Essentially, Auto Mall's position is that the 1997 support order was not properly served and that the statutory duty to withhold and pay over income applied only to Greg's last three checks. Auto Mall concludes that, because the $933.42 check dated August 23, 2001, was received on January 5, 2001, the penalty should be $38,100 ($100 per day multiplied by 381).

However, Erika argues that the $38,100 penalty miscalculates the total number of days the withholdings were overdue. According to Erika, the 1997 support order was properly served, and the August 23 check for $933.42 encompassed Greg's first six checks. Erika relies on Wanshek's testimony that the August 23 check covered "roughly six paychecks." Moreover, Erika asserts that the August 23 check could not possibly encompass the final two checks, dated August 24 and September 1, since Wanshek prepared the August 23 check before the last two checks were issued. Rather, Erika asserts that the second check, issued by Auto Mall on October 2, covered the withholdings from Greg's last two paychecks. Based on Erika's calculations regarding the final three checks, the penalty assessed against Auto Mall should be $90,600 ($100 per day multiplied by 906 days):

| Paycheck Issued | Deduction | Withholding Received | Days Late |
|---|---|---|---|
| August 17, 2000 | $155.57 | January 5, 2001 | 130 |
| August 24, 2000 | $155.57 | October 2, 2001 | 392 |
| September 1, 2000 | $155.57 | October 2, 2001 | 384 |
| | | | 906. |

Because we determine that the 1997 support order was properly served, we agree with Erika's calculations.

Section 20 of the Support Act addresses possible methods of service of support orders. It specifically states that "[t]he obligee or public office *may* serve the income withholding notice on the payor or its superintendent, manager, or other agent by ordinary mail or certified mail return receipt requested, by facsimile transmission or other electronic means, by personal delivery, or by any method provided by law for service of a summons." (Emphasis added.) 750 ILCS 28/20(g)

(West 2002). "An important aid in determining legislative intent is the nature of the auxiliary verb used in the statute." *People v. Reed*, 177 Ill. 2d 389, 393 (1997). The use of the word "may" is generally regarded as indicating a permissive or directory reading. *Reed*, 177 Ill. 2d at 393.

Auto Mall argues that service of the 1997 support order was defective because it was personally delivered by Greg, rather than by Erika or the "public office." However, Auto Mall does not dispute having actual notice of the order. Indeed, Auto Mall complied with the 1997 support order to the extent that it withdrew income from all of Greg's paychecks. Moreover, the trial court specifically found that Greg personally delivered a copy of the 1997 support order to Wanshek when Greg began working at Auto Mall. The $100-per-day penalty provision was enacted to ensure a speedy and simple method of withholding wages in response to the nationwide crisis of delinquent child support. *Dunahee*, 273 Ill. App. 3d at 205. In light of the legislature's use of the word "may," we conclude that Greg's personal delivery of the 1997 support order satisfied this purpose to the same extent as notice served by Erika or the public office. See *Miller v. Miller*, 268 Ill. App. 3d 132, 140 (1994) (court rejected defendant's claim that notice was defective because statute required that notice be served by sheriff rather than plaintiff's attorney; any irregularities were merely of form and affected no substantive rights). Thus, service of the 1997 support order on Auto Mall was valid.

In light of this conclusion, Auto Mall's claim that the $933.42 check covers Greg's final three paychecks lacks merit. Wanshek testified at trial that the $933.42 check he made out on August 23, 2000, reflected six weeks of withholding. Moreover, although the August 23 check was not received until January 5, 2001, it predated Greg's final two paychecks, issued on August 24, 2000, and September 1, 2000. It is clear that Erika did not receive a $311.43 check to cover the last two paychecks until October 2, 2001. Thus, while no penalty may be assessed on paychecks one through five issued after the 1997 support order, this does not change the facts that the $933.42 check received on January 5, 2001, encompasses Greg's first six paychecks, and that the $311.43 check received on October 2, 2001, encompasses the final two paychecks. See *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 275-76 (1988) (past-due installments of child support are a vested right). Accordingly, we agree with Erika that the trial court erred in calculating the $38,100 penalty and that $90,600 is the proper penalty.

Auto Mall also makes the argument that no penalty can be assessed on the final three paychecks because section 35 requires a "knowing" violation. Arguing that its behavior was, at worst,

negligent, Auto Mall asserts that the trial court's finding that it "knowingly" failed to pay over income was against the manifest weight of the evidence.

Section 35 states, in pertinent part:

"If the payor knowingly fails to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, the payor shall pay a penalty of $100 for each day that the withheld amount is not paid to the State Disbursement Unit after the period of 7 business days has expired. The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor creates a presumption that the payor knowingly failed to pay over the amounts." 750 ILCS 28/35(a) (West 2002).

The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *Dunahee*, 273 Ill. App. 3d at 204. "In determining legislative intent, a court may consider the reason and necessity for the law, the evils to be remedied, and the objects to be attained." *Dunahee*, 273 Ill. App. 3d at 205.

The Support Act does not define the term "knowingly," and, to date, there are only four cases that interpret section 35 of the Support Act (or its predecessor (750 ILCS 5/706.1 (West 1996))). Of these cases, *Dunahee* and *Thomas*, both decided by the Appellate Court, Fourth District, provide guidance. In *Dunahee*, the appellate court found a "knowing" violation because, although the employer withheld the proper amount from the employee's paycheck every week, the employer mailed the checks only once a month. *Dunahee*, 273 Ill. App. 3d at 203. In other words, the employer admitted consistent noncompliance with the withholding order by intentionally forwarding the payments only once a month for several months. *Dunahee*, 273 Ill. App. 3d at 208. Noting that the employer offered no compelling excuse for its noncompliance, but claimed only ignorance and an unwillingness to use three postage stamps per month, the appellate court imposed the $100-per-day penalty. *Dunahee*, 273 Ill. App. 3d at 209. In reaching this conclusion, the court stated:

"[T]he employer penalty provision seeks not only to ensure a child support obligee receives the owed child support payments, but also that the obligee receives the support payments *in a timely manner*. Here, defendant did *not* pay plaintiff in a timely manner. *** Indeed, without the application of a penalty, employers would have an incentive to *not* send in a withheld child support payment in a timely manner. The longer a withheld child support check is not mailed to the obligee, the longer those funds are available for the

employer to use to its own advantage, either to help support the operation of its business activities, or to allow invested money to yield a higher return." (Emphasis in original.) *Dunahee*, 273 Ill. App. 3d at 208-09.

Conversely, in *Thomas*, the employer complied with the statute by paying over the income from each check within the seven-day period after paying the employee. *Thomas*, 351 Ill. App. 3d at 656. However, the employer discovered in October 2001 that a child support check was not written or paid over from the pay period ending January 28, 2000. The employer testified that, even though the employee had worked only one day that week, the employer had cut him a check and the failure to issue the child support check was an oversight. *Thomas*, 351 Ill. App. 3d at 647-49. In addition, the SDU returned a support check (November 2000 check) to the employer because it was made payable to an unacceptable payee. The employer then changed the payee and mailed it back to the SDU. *Thomas*, 351 Ill. App. 3d at 649. Based on these facts, the appellate court found that the trial court erred in imposing a 622-day penalty on the January 2000 check and an 11-day penalty on the November 2000 check because neither constituted a "knowing" violation under the Support Act. *Thomas*, 351 Ill. App. 3d at 656. Unlike *Dunahee*, where the employer knew it was not paying over the income in a timely manner, the employer in *Thomas* was, at worst, negligent. The court stated that the employer was "cognizant of forwarding the child support within the required seven business days and, except for a few innocent exceptions, the evidence did not demonstrate that [the employer] failed to do so." *Thomas*, 351 Ill. App. 3d at 656.

While Auto Mall claims that there was no "knowing" violation in this case, we cannot agree. The trial court expressly found that Auto Mall knowingly failed to pay over amounts withheld from Greg's final three paychecks. According to the facts, Wanshek received notice of the $100-per-day penalty provision when he was properly served with the 2000 support order. Wanshek acknowledged that, at some point, he became aware that the money that was being withheld from Greg's paychecks was not being paid over. As a result, he wrote a $933.42 check encompassing six pay periods on August 23, 2000. Despite his effort to correct the situation, the check was apparently "lost" on Wanshek's desk, mailed in late December, and not received until January 5, 2001. Further, Auto Mall failed to pay over amounts withheld from Greg's final two checks. A check for $311.42 was not received until October 2, 2001. In short, this case does not present a situation similar to *Thomas*, where the employer was complying with the statute save for a few innocent exceptions. Instead, the facts of this case more

closely resemble *Dunahee*, where the employer offered no compelling excuse for consistently failing to comply with the statute.

More important, Auto Mall's actions in this case raised the presumption of a knowing violation, since it failed, on more than one occasion, to pay amounts withheld to the SDU within the seven-business-day period. While Auto Mall argues that this presumption may not apply to the checks issued prior to its receipt of the 2000 support order, this argument is of no consequence since the presumption was clearly raised by Auto Mall's failure to pay over support withheld from Greg's final three paychecks. Based on this evidence, we cannot say that the trial court's finding of a "knowing" violation was against the manifest weight of the evidence.

We note that Auto Mall also raises various affirmative defenses with respect to the last two paychecks. Specifically, Auto Mall claims that Erika failed to mitigate the damages, that she should be estopped from recovering penalties, and that she is receiving an unjustified windfall. We reject these arguments.

Contrary to Auto Mall's assertion, section 35 placed no burden on Erika to inform it of its noncompliance with the support orders in this case. See *Dunahee*, 273 Ill. App. 3d at 209 (such a burden should not be placed on a child support obligee where the employer already has the means at its disposal to read and comply with an order of withholding that has been served). Moreover, the fact that the penalty assessment may result in a windfall to Erika is irrelevant because the penalty is not related solely to the hardship she suffered. See *Grams*, 319 Ill. App. 3d at 571.

### D. Constitutionality of Section 35

■ Auto Mall next argues that section 35 of the Support Act is unconstitutionally vague as applied because the $100-per-day penalty is not included in section 50 (750 ILCS 28/50 (West 2002)), entitled "Penalties." According to Auto Mall, the legislative title of section 50 is misleading because it does not reference the more severe $100-per-day penalty contained in section 35, entitled "Duties of payor." In addition, Auto Mall claims that sections 35 and 50 contain conflicting penalties and that the Support Act did not provide "fair notice" of the potential penalties to be assessed in this case.

The constitutionality of a statute is a question of law and our review is *de novo*. *In re R.C.*, 195 Ill. 2d 291, 296 (2001). Statutes are presumed to be constitutional, and the party challenging the validity of the statute bears the burden of establishing its constitutional infirmity. *In re R.C.*, 195 Ill. 2d at 296. We must construe a statute so as to affirm its constitutionality, if the statute is reasonably capable of

such a construction. *Money*, 124 Ill. 2d at 272. Moreover, if a statute's construction is doubtful, we will resolve the doubt in favor of its validity. *Money*, 124 Ill. 2d at 272.

The purpose and intent of the Support Act is to consolidate into a single act the lengthy and nearly identical provisions relating to income withholding for support that were formerly contained in section 10—16.2 of the Illinois Public Aid Code (305 ILCS 5/10—16.2 (West 2002)), section 706.1 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/706.1 (West 2002)), section 4.1 of the Non-Support of Spouse and Children Act (750 ILCS 15/4.1 (West 2002)), and section 20 of the Illinois Parentage Act of 1984 (750 ILCS 45/20 (West 2002)). 750 ILCS 28/5 (West 2002). As discussed, section 35, entitled "Duties of payor," sets forth all of the duties of an employer served with an income withholding order. After the employer withholds child support, it must "pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor." 750 ILCS 28/35(a) (West 2002). Further, section 35 states that "[i]f the payor knowingly fails to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, the payor shall pay a penalty of $100 for each day that the withheld amount is not paid to the State Disbursement Unit after the period of 7 business days has expired." 750 ILCS 28/35(a) (West 2002).

However, an employer may be liable for other penalties for violating the Support Act. Section 50, entitled "Penalties," states:

"(a) Where a payor wilfully fails to withhold or pay over income pursuant to a properly served income withholding notice, or wilfully discharges, disciplines, refuses to hire or otherwise penalizes an obligor as prohibited by Section 40, or otherwise fails to comply with any duties imposed by this Act, the obligee, public office or obligor, as appropriate, may file a complaint with the court against the payor. The Clerk of the Circuit Court shall notify the obligee or public office, as appropriate, and the obligor and payor of the time and place of the hearing on the complaint. The court shall resolve any factual dispute including, but not limited to, a denial that the payor is paying or has paid income to the obligor. Upon a finding in favor of the complaining party, the court:

(1) shall enter judgment and direct the enforcement thereof for the total amount that the payor wilfully failed to withhold or pay over; and

(2) may order employment or reinstatement of or restitution to the obligor, or both, where the obligor has been discharged, disciplined, denied employment or otherwise penalized by the

payor and may impose a fine upon the payor not to exceed $200." 750 ILCS 28/50 (West 2002).

A statute is unconstitutionally vague and violates due process if it " ' "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." ' " *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 425 (1997), quoting *People v. Lang*, 113 Ill. 2d 407, 454 (1986), quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 31 L. Ed. 2d 110, 115, 92 S. Ct. 839, 843 (1972). Additionally, a statute must provide explicit standards for those police officers, judges, and juries who apply them, in order to prevent arbitrary and discriminatory enforcement. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 442 (1998). "The terms of a statute cannot be so ill-defined that their meaning may be determined at whim rather than by objective criteria; rather, the statute's terms must serve as a guide to those who must comply with the statute." *East St. Louis Federation of Teachers, Local 1220*, 178 Ill. 2d at 425. Further, a statute will not be rendered unconstitutionally vague simply because one could imagine hypothetical situations where the meaning of some terms might be called into question. *East St. Louis Federation of Teachers, Local 1220*, 178 Ill. 2d at 425.

Auto Mall does not claim that the language in section 35 is unclear or ambiguous. Instead, it argues that the misleading nature of section 50, which is entitled "Penalties" but fails to reference the $100-per-day penalty, destroys fair notice of the penalty provision "buried" in section 35. We reject this argument.

"When the legislature enacts an official title or heading to accompany a statutory provision, that title or heading is considered only as a 'short-hand reference to the general subject matter involved' in that statutory section, and 'cannot limit the plain meaning of the text.' " *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 505-06 (2000), quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29, 91 L. Ed. 1646, 1652, 67 S. Ct. 1387, 1392 (1947). Such "[o]fficial headings or titles 'are of use only when they shed light on some ambiguous word or phrase' within the text of the statute, and 'they cannot undo or limit that which the text makes plain.' " *Michigan Avenue National Bank*, 191 Ill. 2d at 506, quoting *Brotherhood of R.R. Trainmen*, 331 U.S. at 529, 91 L. Ed. at 1652, 67 S. Ct. at 1392. As stated by the United States Supreme Court:

> "[H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated

and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles." *Brotherhood of R.R. Trainmen*, 331 U.S. at 528, 91 L. Ed. at 1652, 67 S. Ct. at 1392.

The legislature chose to include the $100-per-day penalty provision in the section detailing the duties of an employer to withhold and pay over income upon being served with an income withholding notice (section 35). As Auto Mall admits, the language in section 35 is clear and unambiguous. Accordingly, we decline to find section 35 unconstitutionally vague simply because the $100-per-day penalty is not referenced in the penalties provision of the Support Act (section 50).

Nor do we agree with Auto Mall's assertion that sections 35 and 50 contain conflicting provisions. Section 50 permits a court to impose a fine of up to $200 upon an employer that discharges, disciplines, fails to hire, or otherwise penalizes an employee because the employee is subject to the mandatory withholding provision. *Grams*, 319 Ill. App. 3d at 571-72. In addition, section 50 provides that, where an employer "wilfully fails to withhold or pay over income," the court "shall enter judgment and direct the enforcement thereof for the total amount that the payor wilfully failed to withhold or pay over." 750 ILCS 28/50(a)(1) (West 2002). Conversely, section 35 imposes a mandatory $100-per-day penalty for failure to pay over withheld income. Thus, the penalties do not conflict, and it was proper to assess the $100-per-day penalty against Auto Mall.

Auto Mall next argues that the $100-per-day penalty in section 35 is grossly excessive and lacks sufficient due process protections. Arguing that civil penalties are similar to punitive damages, Auto Mall urges us to resolve its due process claims by looking to the punitive damages cases decided by the United States Supreme Court.

Due process prohibits states from imposing grossly excessive punishments on tortfeasors. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 434, 149 L. Ed. 2d 674, 685, 121 S. Ct. 1678, 1684 (2001). "That [due process] places a limitation upon the power of the States to prescribe penalties for violations of their laws has been fully recognized, but always with the express or tacit qualification that the States still possess a wide latitude of discretion in the matter and that their enactments transcend the limitation only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mountain & Southern Ry. Co. v. Williams*, 251 U.S. 63,

66-67, 64 L. Ed. 139, 141, 40 S. Ct. 71, 73 (1919). The reason is that "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574, 134 L. Ed. 2d 809, 826, 116 S. Ct. 1589, 1598 (1996).

Because punitive damages pose an acute danger of arbitrary deprivation of property, and jury instructions typically afford the jury wide discretion in choosing amounts (see *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 418, 155 L. Ed. 2d 585, 601, 123 S. Ct. 1513, 1520 (2003)), the Supreme Court created three criteria to assess whether a defendant "receive[d] adequate notice of the magnitude of the sanction that [the State] might impose." *BMW of North America, Inc.,* 517 U.S. at 574, 134 L. Ed. 2d at 826, 116 S. Ct. at 1598. Specifically, the Supreme Court instructed courts reviewing punitive damages to consider: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Campbell,* 538 U.S. at 418, 155 L. Ed. 2d at 601, 123 S. Ct. at 1520. Based on these three guideposts, Auto Mall asserts that: (1) it exhibited no reprehensibility beyond negligence; (2) the penalty is "wholly disproportionate" to the amount actually owed; and (3) no other state has a penalty as severe as that contained in section 35 of the Support Act.

Because this case involves a statutory penalty rather than an award of punitive damages, we decline to resolve Auto Mall's due process claim based on the above criteria. Stated simply, the concerns over the imprecise manner in which punitive damages systems are administered are not present here. Unlike the inherent uncertainty associated with punitive damages, section 35 of the Support Act provides employers with exact notice of the $100-per-day penalty they will face for failing to comply with a support order. Indeed, employers receive personal notice of their duties to withhold and pay over income, as well as the penalty for failing to do so, through service of the income withholding order. While Auto Mall characterizes the penalty as "excessive" compared to the amount actually owed, the penalty complained of is $100 per day, and it is the employer that controls the extent of the fine.

As previously discussed, the $100-per-day penalty provision was enacted to ensure a speedy and simple method of withholding wages

in response to the nationwide crisis of delinquent child support. *Dunahee*, 273 Ill. App. 3d at 205. Although the penalty was thought to be harsh by some legislators, it was justified on the basis that "noncompliance with a child support withholding order by an employer may place a substantial burden on a child support obligee, who could be forced to miss mortgage payments or postpone purchasing necessities for a child until the overdue payment arrives." *Grams*, 319 Ill. App. 3d at 570. In addition, the penalty was justified on the basis that it would apply only to employers that knowingly fail to turn over withholdings in a timely fashion. *Grams*, 319 Ill. App. 3d at 570. Accordingly, we reject Auto Mall's assertion that the $100-per-day penalty is excessive.

### III. CONCLUSION
For all of these reasons, we reverse the judgment of the circuit court of Du Page County assessing a $38,100 penalty under section 35 of the Support Act, and impose a penalty of $90,600.

Reversed; judgment entered.

O'MALLEY, P.J., and CALLUM, J., concur.