# Illinois Official Reports

## Appellate Court

---

### *Burns v. Delta Airlines, Inc.*, 2021 IL App (2d) 200313

---

| | |
|---|---|
| Appellate Court Caption | HEATHER BURNS, Plaintiff-Appellee and Cross-Appellant, v. DELTA AIRLINES, INC., Defendant-Appellant and Cross-Appellee. |
| District & No. | Second District No. 2-20-0313 |
| Filed | June 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 16-L-117; the Hon. Robert G. Kleeman, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |
| Counsel on Appeal | Jenna E. Milaeger and Michael K. Goldberg, of Goldberg Law Group, LLC, of Chicago, for appellant. |
| | Arthur E. Rosenson, of Cohen Rosenson & Zuckerman, LLC, of Chicago, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Jorgensen and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Delta Airlines, Inc. (Delta), appeals from the trial court's order denying its motion for summary judgment and granting the motion for partial summary judgment of plaintiff, Heather Burns. Delta maintains that the court erred in finding that it knowingly violated the Income Withholding for Support Act (Act) (750 ILCS 28/1 *et seq.* (West 2014)), resulting in an award of penalties to Burns in the amount of $190,000. Burns cross-appeals from the court's denial of her request to double the amount of the award by imposing separate penalties under sections 35(a) and 45(j) of the Act (*id.* §§ 35(a), 45(j)).

¶ 2                                    I. BACKGROUND

¶ 3    Burns and her former husband, August Lifferth, were divorced on August 25, 2014. The trial court awarded Burns custody of their two minor children. The court further ordered a garnishment of Lifferth's wages for child support. To that end, the Illinois Department of Healthcare and Family Services (HFS) prepared and served income withholding orders (IWOs) upon Lifferth's employer, Delta. Section 35(a) of the Act imposes a $100-per-day penalty on an employer who knowingly fails to withhold income of an employee in the amount of the income withholding notice served under the Act.

¶ 4    An IWO is a court form with typed inserts. The IWO that is the subject of this appeal was issued on November 20, 2014. It was the only IWO in effect from November 30, 2014, through October 26, 2015, and it ordered Delta to withhold a total of $591.24 per biweekly pay period, which it was to send to the State Disbursement Unit (SDU) in Carol Stream. The IWO directed that Delta was to "begin withholding no later than the first pay period that occurs 14 days after the date of 11/20/2014" and to "send payment within 7 working days of the pay date."

¶ 5    Delta could not "withhold the full amount of support for any or all orders" because Lifferth had insufficient earnings to cover his child support payments; therefore, it was to "withhold up to 65% of disposable income for all orders." The IWO then set out the formula for Delta to determine the exact percentage of Lifferth's disposable income that it was to withhold:

>    "The Federal limit is 50% of the disposable income if the obligor is supporting another family and 60% of the disposable income if the obligor is not supporting another family. However, those limits increase 5%—to 55% and 65%—if the arrears are greater than 12 weeks."

The November 20, 2014, IWO indicated that the past-due child support was more than 12 weeks in arrears. It did not indicate whether Lifferth was supporting another family.

¶ 6    Between February 6, 2015, and October 2, 2015, Lifferth's wages were insufficient to cover the specified amount of payment. "Therefore," according to Delta, the amount of Lifferth's garnishment "was calculated using the withholding limits set by [the federal Consumer Credit Protection Act (15 U.S.C. § 1673(b) (2012))] as described in the IWO and 50 percent" of Lifferth's disposable income was garnished for child support.

¶ 7    On February 13, 2015, Lifferth was due to receive a profit-sharing payment in the amount of $1714.89 from Delta. The IWO states with respect to lump sum or bonus payments: "You may be required to notify a state *** agency of upcoming lump sum payments to this employee/obligor such as bonuses, commissions or severance pay. Contact the sender to determine if you are required to report and/or withhold lump sum payments." According to

Delta, Xerox Business Services (Xerox), which during the relevant time handled Delta's payroll processing, including employee wage garnishment, contacted HFS regarding the profit-sharing payment, and HFS "did not indicate that any withholding was required." Based on this representation, Delta did not withhold income from the February 13, 2015, profit-sharing payment.

¶ 8    In May 2015, Burns served a subpoena on Delta for copies of its payroll records in order to determine the amount Delta was withholding from Lifferth's paychecks. She learned that Delta was withholding 50% of his disposable income and not 65%, which she believed to be appropriate. According to Burns's affidavit, she knew that Lifferth was not married or supporting another family in 2014-15, because "[h]e told me so and I saw that he lived alone when we'd drop off and pick up the [c]hildren." In October 2015, Burns served Delta with a second subpoena to produce documents in order to determine whether it had increased the withholding amount. It had not.

¶ 9    On November 2, 2015, Burns sent Delta a certified letter demanding that it comply with the Act and remit her shorted child support. She also demanded that Delta pay 9% statutory simple interest and "pay the $100 per day penalty for each day that Delta failed to remit the amount owed beyond the 14 day notice period."

¶ 10    Delta forwarded the demand letter to Xerox. According to the affidavit of Xerox's payroll operations manager, Xerox was advised by a representative of the Illinois Department of Children and Family Services that Delta was in compliance "with the IWOs issued" for Lifferth "by withholding income and paying it to the Illinois State Disbursement Unit pursuant to the IWO."[1] On November 24, 2015, internal Xerox e-mail correspondence confirmed Burns's claims that Delta "should be deducting at the 65% of disposable earnings since the employee is not supporting another family and the case is in arrears greater than 12 weeks." The correspondence also noted that, until Delta remitted the shorted payments, penalties would accrue. These findings were reconfirmed internally by Xerox on November 30, 2015.

¶ 11    Xerox determined that it had complied with "prior IWOs"[2] by withholding 50% of Lifferth's income but "accepted Ms. Burns' request to increase the amount of income deducted from Mr. Lifferth's pay prospectively." At that time, Delta's payroll system was programmed to deduct a maximum of 60% of an employee's disposable earnings, necessitating a request to have the system "updated" so that 65% could be garnished. Beginning on November 20, 2015, Xerox increased the withholding to 60%, and on December 18, 2015, to 65%.

¶ 12    Delta did not respond directly to Burns's demand letter or remit any amounts. On February 5, 2016, Burns filed suit, claiming that Delta violated section 35(a) of the Act by knowingly withholding only 50% of Lifferth's disposable income under the IWO and violated section 45(j) of the Act by not responding to the demand letter within 14 days of receiving it.

---

[1]Delta asserts on appeal that it also "conferred with the payroll department at Xerox to determine whether Lifferth was supporting another family." The record citations Delta provides do not support this assertion.

[2]Delta states on appeal that Xerox believed it had complied with the "Amended IWO," *i.e.*, the IWO at issue in this appeal, contrary to Xerox's cited affidavit, which states that Delta had complied with "*prior* IWOs" (emphasis added). Some of the prior IWOs did not indicate that Lifferth was more than 12 weeks in arrears.

¶ 13   On April 26, 2016, after being served with Burns's complaint, Delta authorized Xerox to issue payment to the SDU in the amount of $2395.77, an amount intended to pay Burns the difference between the amount of child support she received at the 50% rate and what she would have received had Lifferth's disposable income been subject to 65% withholding. Delta did not remit interest or penalties to Burns.

¶ 14   After discovery was closed, the parties proceeded to file and brief cross-motions for summary judgment. Delta's motion for summary judgment argued that Burns failed to show that Delta's withholding 50% rather than 65% of Lifferth's disposable income was a knowing violation of section 35(a) of the Act. Delta maintained that it was "clearly cognizant" of its obligation to withhold and remit income to the SDU in response to the IWO and that its withholding 50% rather 65% was "an innocent or negligent mistake" that should not trigger penalties under section 35(a).

¶ 15   Burns moved for the entry of partial summary judgment on the issue of liability, arguing that Delta failed to comply with the IWO by withholding 50% rather than 65% of Lifferth's disposable income from February to October 2015. According to Burns, Delta knowingly violated the Act because the form language in the IWO is unambiguous; moreover, Delta ignored her demand letter for five months despite its own agent agreeing with Burns in November 2015 that 65% was the correct withholding amount and that penalties would be due if Delta "failed to timely cure its violations."

¶ 16   The trial court conducted a hearing on the parties' summary judgment motions and, on September 10, 2019, issued a memorandum opinion and order granting Burns's motion for partial summary judgment and denying Delta's motion for summary judgment. The court found as follows. Between February 6 and October 2, 2015, Lifferth's earnings were insufficient to cover the required support payment. At all relevant times, Lifferth was more than 12 weeks in arrears and was not supporting another family. Accordingly, under the federal upper limits for wage garnishments as summarized in the IWO, Burns was entitled to 65% of Lifferth's disposable income.

¶ 17   Further, according to the court, the parties did not dispute that Burns provided notice under the Act in November 2015 and that Delta did not provide a response under the Act until April 2016, when it remitted reimbursements. The plain and ordinary meaning of section 35's penalty provision "establishes that the legislature intended to penalize employers who knowingly fail to withhold the amount *designated* in an IWO. Thus, any amount that falls short of the designated amount opens the employer to liability" under the Act. (Emphasis in original.)

¶ 18   Finally, with respect to whether Delta's failure to withhold 65% of Lifferth's disposable income was "knowing" under the Act, the court stated:

> "When taken together, *** the undisputed facts clearly show that [Delta's] shortcoming was more than innocent or negligent oversight. By its own admission, and in apparent disregard for the Withholding Act, [Delta's] payroll system was configured to deduct a maximum of 60% of an employee's disposable income when the federal limit was set at 65%. Further, [Delta's] failure to withhold the correct percentage was not a one-off occurrence. In fact, it persisted for several months before [Burns] alerted billing agents to remit to her the correct amount. Finally, [Delta] failed to reimburse [Burns] for the underpayments until five months after the statutory 14-day grace period

- 4 -

had expired. On balance, [Delta's] failure to withhold the designated amount was knowing."

¶ 19    The court denied Delta's motion to reconsider. Burns filed a motion for the entry of an award of damages, and after briefing and a hearing, the court entered an award of penalties in favor of Burns in the amount of $190,000 based on its finding that Delta committed 19 violations of the Act that were in excess of 100 days, including Delta's failure to withhold from Lifferth's profit-sharing payment. The court further held that Burns was not entitled to separate awards of penalties under sections 35(a) and 45(j) of the Act.

¶ 20                                    II. ANALYSIS

¶ 21                                    A. Delta's Appeal

¶ 22    Delta argues that the trial court erred in denying its motion for summary judgment and granting Burns's motion for partial summary judgment on the ground that Delta knowingly failed to withhold child support payments under section 35(a) of the Act. An appeal following a grant of summary judgment is subject to *de novo* review. *Seymour v. Collins*, 2015 IL 118432, ¶ 42.

¶ 23    The parties do not dispute that Delta ultimately increased the withholding amount from 50% to 65% and paid Burns the difference between the 50% paid and 65% for the relevant time period. They dispute, however, whether Delta "knowingly" failed to withhold the amount designated in the IWO and what penalties, if any, should have been imposed on Delta.

¶ 24    Although "knowingly" is not defined in the Act, several cases have addressed the question of whether a particular violation was "knowing." In *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 203, 208-10 (1995), for example, the Fourth District found a "knowing[ ]" violation where the employer withheld the proper amount from the employee's paycheck every week but intentionally mailed the checks only once a month for several months in order to save money on postage. In *In re Marriage of Chen*, 354 Ill. App. 3d 1004, 1007, 1017-18 (2004), this court found that the employer committed a knowing violation where it withheld payments from its employee's wages but failed to pay them over and "offered no compelling excuse for consistently failing to comply with the statute."

¶ 25    In *In re Marriage of Solomon*, 2015 IL App (1st) 133048, ¶¶ 32-33, 35, the First District found that the employer's failure to withhold was an "unintentional and honest" mistake and not a knowing violation where it had mistakenly entered the withholdings as bimonthly, instead of biweekly, resulting in a failure to withhold on two occasions when the employee received three paychecks in a month. The employer did not realize its error until contacted by the petitioner's attorney, at which time it immediately corrected the problem. *Id.* ¶¶ 33-34. The *Solomon* court stated, "Illinois case law makes clear that penalties provided for by section 35 of the Withholding Act should only be imposed on those employers who purposely disregard a court's support order." *Id.* ¶ 35.

¶ 26    In *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶¶ 4, 115, the Fourth District found that the employer's failure to remit withholdings was initially an innocent mistake that subsequently became knowing when the employer failed to correct the mistake after receiving notice from the obligee.

¶ 27    Although these cases provide some guidance, no case cited by either party, or known to this court, addresses the precise question presented here: whether penalties are appropriate

when the employer regularly withholds an amount within the range of percentages indicated in the IWO, even if it is not the correct percentage, and makes timely remittances to the SDU.

¶ 28 The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 12. The best indicator of the legislature's intent is the plain and ordinary meaning of the statute. *Id.* When the language of a statute is clear and unambiguous, it should be applied as written, without resort to extrinsic aids of construction. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47. "Additionally, in determining the legislative intent of a statute, a court may consider not only the language used, but also the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved." *Prazen v. Shoop*, 2013 IL 115035, ¶ 21. Courts should construe words and phrases in light of other relevant provisions. *In re Jarquan B.*, 2017 IL 121483, ¶ 22. Statutory interpretation is a question of law, reviewed *de novo*. *Schultz*, 2013 IL 115738, ¶ 12.

¶ 29 Section 35(a) is titled "Duties of payor" and provides, in part, as follows:

"(a) It shall be the duty of any payor who has been served with an income withholding notice to deduct and pay over income as provided in this Section. The payor shall deduct the amount designated in the income withholding notice *** beginning no later than the next payment of income which is payable or creditable to the obligor that occurs 14 days following the date the income withholding notice was mailed, sent by facsimile or other electronic means, or placed for personal delivery to or service on the payor. *** The payor shall pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor. If the payor knowingly fails to withhold the amount designated in the income withholding notice or to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, then the payor shall pay a penalty of $100 for each day that the amount designated in the income withholding notice (whether or not withheld by the payor) is not paid to the State Disbursement Unit after the period of 7 business days has expired. The total penalty for a payor's failure, on one occasion, to withhold or pay to the State Disbursement Unit an amount designated in the income withholding notice may not exceed $10,000. The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor creates a presumption that the payor knowingly failed to pay over the amounts. This penalty may be collected in a civil action which may be brought against the payor in favor of the obligee or public office. An action to collect the penalty may not be brought more than one year after the date of the payor's alleged failure to withhold or pay income. A finding of a payor's nonperformance within the time required under this Act must be documented by a certified mail return receipt or a sheriff's or private process server's proof of service showing the date the income withholding notice was served on the payor. For purposes of this Act, a withheld amount shall be considered paid by a payor on the date it is mailed by the payor, or on the date an electronic funds transfer of the amount has been initiated by the payor, or on the date delivery of the amount has been initiated by the payor." 750 ILCS 28/35(a) (West 2014).

¶ 30 The $100-per-day penalty is assessed for each violation of the Act, and "[a] separate violation occurs each time an employer knowingly fails to remit an amount that it has withheld from an employee's paycheck." (Internal quotation marks omitted.) *In re Marriage of Miller*, 227 Ill. 2d 185, 194 (2007). "The $100-per-day penalty provision was enacted to ensure a speedy and simple method of withholding wages in response to the nationwide crisis of delinquent child support." *Chen*, 354 Ill. App. 3d at 1015. "The purpose of allowing a plaintiff to recover the $100-per-day penalty for each day of a knowing violation is to punish parties that violated the Act and to discourage future violations." *In re Marriage of Schmidgall*, 2018 IL App (3d) 170189, ¶ 56. "The fact that the penalty assessment may result in a 'windfall' to the recipient is irrelevant because the penalty is not solely related to the hardship suffered by the recipient." *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 571 (2001). Nonetheless, because section 35(a) is penal in nature and creates a new liability on the part of payors, the Act is strictly construed in favor of the persons sought to be subjected to its operation. See *Schultz*, 2013 IL 115738, ¶ 12.

¶ 31 Examining 1991 legislative debate on section 35(a)'s penalty provision, the *Dunahee* court found that "the legislature intended the penalty to be applied where an employer knowingly failed to make a timely payment of withheld child support." *Dunahee*, 273 Ill. App. 3d at 208. Illinois House of Representatives debate during the 2012 amendments also supports a finding that the penalty provision was intended to ensure timely payment of child support. The $10,000 maximum penalty per missed payment is characterized in the debate as "an incentive for [payors] to make that payment," and the sponsor asks for support "to make sure that we get these payments on a timely basis." 97th Ill. Gen. Assem., House Proceedings, Mar. 27, 2012, at 46-48 (statements of Representative Pritchard); see also *Grams*, 319 Ill. App. 3d at 570 ("While the penalty was thought to be harsh by some legislators, it was justified on the basis that it would apply only to the employer who knowingly fails to turn over withholdings in a timely fashion.").

¶ 32 We agree with Delta that the legislative history, together with the cases that have applied section 35(a), indicate that the penalty provisions were enacted to ensure that child support is paid in a timely manner. Burns has presented no legislative history showing a contrary purpose of the Act, and she cites no case that casts doubt on this interpretation of section 35(a). Further, because section 35(a) is penal in nature and creates a new liability on the part of payors, the Act is strictly construed in favor of Delta. See *Schultz*, 2013 IL 115738, ¶ 12.

¶ 33 Delta further argues that it substantially complied with section 35(a) of the Act by withholding 50% of Lifferth's disposable income and timely remitting that amount to the SDU. Delta argues that, since it made prompt payments, its error with respect to the amount of the payments could not be knowing but, rather, was "an innocent or negligent mistake." Delta cites *Hundley*, 2019 IL App (4th) 180380, ¶ 114 (citing *Dunahee*, 273 Ill. App. 3d at 208), for the proposition that "[a]n employer who innocently or negligently failed to make a payment would not be subject to the penalty."

¶ 34 In response, Burns argues that there is no provision in section 35(a) for substantial compliance. Burns concludes that, because Lifferth was earning insufficient income, not supporting another family, and more than 12 weeks in arrears, 65% was the amount designated in the IWO for purposes of section 35(a)'s penalty provision.

¶ 35 To support her conclusion that Lifferth was not supporting another family, Burns places the burden on Delta to prove a negative. Acknowledging that the IWO did not indicate whether

Lifferth was supporting another family, she asserts, "Delta has never claimed otherwise" and "cannot justify withholding as if Lifferth was supporting a second family when it cannot offer any factual basis to support such a claim." Burns herself offers no factual basis for her opposing position, nor did the trial court offer any factual basis for its finding that Lifferth was not supporting another family.

¶ 36    We find that the IWO creates ambiguity by listing support of another family as one of two factors for determining the correct percentage to withhold while providing no information as to whether Lifferth was or was not supporting another family. The preprinted form does not address whose responsibility it is to make this determination or designate a space on the form in which to record the answer. We further note that the IWO is silent as to the possibility that an employee might support another family without involvement of the courts or governmental agencies.

¶ 37    Burns also argues, apparently in the alternative, that the IWO unequivocally indicated that Lifferth was more than 12 weeks in arrears, because a box stating as much had been checked by the HFS. Therefore, according to Burns, Delta knew from the date it received the IWO that a 50% withholding rate could not apply and would "always be too low." Burns contends that repeatedly misreading the IWO's clear instructions amounts to "knowingly" violating the Act, citing *Chen*, 354 Ill. App. 3d at 1006-08, where "the payor's violations were deemed to have been 'knowing' based on its repeated failure to comply with the Act over 5½ months." In *Chen*, however, the payor repeatedly violated the purpose of section 35(a)'s penalties by failing to turn over any of the money it withheld from its employee's wages. Delta consistently turned over its withholdings and, therefore, did not violate the purpose of ensuring the timely payment of child support.

¶ 38    Burns presumes Delta's knowingness from the indication on the face of the IWO that Lifferth was more than 12 weeks in arrears and the instruction, in that event, to withhold 55%, as opposed to 50%, of Lifferth's disposable income. However, these failures do not persuade us that Delta acted "knowingly" or that it "purposely disregard[ed] a court's support order." See *Solomon*, 2015 IL App (1st) 133048, ¶ 35. No evidence is presented that Delta "conscious[ly]" or "[d]eliberate[ly]" under-withheld Lifferth's income. See *knowing*, Black's Law Dictionary (11th ed. 2019). At most, Burns's arguments and the trial court's reasoning suggest that Delta knew or *should have known* that it was to withhold 55%, which is another way of saying that Delta was negligent. Additionally, we note that Delta stood to gain nothing from withholding 5% less than the IWO required.

¶ 39    Given that the IWO's instructions leave room for human error and are incomplete, the severe penalties provided under the Act are a disproportionate remedy for mistake or negligence such as Delta's. Read together with the IWO in this case, section 35(a) penalties are best understood as a means of ensuring that at least 50% of an obligor's disposable income is withheld and timely paid as child support. Because Delta did at least this much from November 30, 2014, through October 26, 2015, section 35(a)'s penalty provisions do not apply to Delta's under-withholding during that period. Thus, the trial court erred in denying Delta's motion for summary judgment and granting Burns's motion for partial summary judgment.

¶ 40                       B. Burns's Cross-Appeal

¶ 41    Burns asserts that the trial court erred in failing to impose an additional $100-per-day penalty under section 45(j) of the Act. Section 45(j), titled "Additional duties," provides:

"(j) If an obligee who is receiving income withholding payments under this Act does not receive a payment required under the income withholding notice, he or she must give written notice of the non-receipt to the payor. The notice must include the date on which the obligee believes the payment was to have been made and the amount of the payment. The obligee must send the notice to the payor by certified mail, return receipt requested.

After receiving a written notice of non-receipt of payment under this subsection, a payor must, within 14 days thereafter, either (i) notify the obligee of the reason for the non-receipt of payment or (ii) make the required payment, together with interest at the rate of 9% calculated from the date on which the payment of income should have been made. A payor who fails to comply with this subsection is subject to the $100 per day penalty provided under subsection (a) of Section 35 of this Act." 750 ILCS 28/45(j) (West 2014).

¶ 42    Burns contends that, because Delta did not respond within 14 days to either explain or correct the withholding errors that she identified in her demand letter of November 2, 2015, she is entitled to additional penalties under section 45(j) for Delta's knowing violations between February 6 and October 2, 2015. She calls this an issue of first impression. We do not reach this issue, however, because we have determined that the violations between February 6 and October 2, 2015, were not knowing and that, therefore, she is not entitled to penalties under section 35(a). The question that remains is whether she is entitled to a penal remedy under section 45(j). We find that she is.

¶ 43    It is undisputed that Delta received Burns's nonreceipt notice, or demand letter, on November 2, 2015, and did not respond or make the required payment until December 18, 2015, when it raised the withholding amount to 65%. Burns is owed any interest, calculated at the 9% statutory rate, that may have accrued on the differential between a 50% withholding and a 65% withholding from November 2, 2015, until paid. Delta concedes the possibility that it knowingly violated the Act after November 2, 2015, subjecting itself to section 35(a)'s penalty provisions. We believe that the relevant period of time for the imposition of a section 35(a) penalty began to run on November 16, 2015, or 14 days after November 2, when the statutory time period in which to respond to the notice expired.

¶ 44    Finally, the fact that later, on April 26, 2016, Delta reimbursed Burns the difference between the amount of child support she received from Delta and what she would have received at a 65% withholding rate does not require that Delta be punished retroactively for unknowingly misreading the IWO instructions before it received the nonreceipt notice.

¶ 45                                     III. CONCLUSION

¶ 46    The judgment of the circuit court of Du Page County denying Delta's motion for summary judgment and granting Burns's motion for partial summary judgment is vacated. Burns's cross-appeal is partially granted: Delta is to pay penalties pursuant to section 35(a) for the period of time it failed to comply with section 45(j), as well as any interest that may have accrued on the differential between what was paid and what should have been paid during that time period.

¶ 47        The cause is remanded for further proceedings consistent with this opinion.

¶ 48        Vacated and remanded with directions.